In re CASTLE RANCH OF RAMONA, INC., a California Corporation, Debtor.

CASTLE RANCH I, LTD., a limited partnership and Castle Ranch II, Ltd., a limited partnership, Plaintiffs,

v.

CASTLE RANCH OF RAMONA, INC., a California Corporation, Defendant.

Bankruptcy No. 79–03419–KZ.

United States Bankruptcy Court, S. D. California.

Feb. 19, 1980.

As Amended Feb. 28, 1980.

Robert G. Sullivan, of Thompson, Sullivan, McGrath & McDonald, San Diego, Cal., for debtor.

John A. Graham, Beverly Hills, Cal., for Castle Ranch I & II, plaintiffs.

## MEMORANDUM OF OPINION VACATING § 362 STAY

HERBERT KATZ, Bankruptcy Judge.

This is an action seeking relief from the automatic stay provisions of § 362(a) of the Bankruptcy Code [11 U.S.C. § 362(a)], brought by two limited partnerships who are the beneficiaries of an all inclusive deed of trust on property owned by the debtor which secures a promissory note in the original principal amount of $1,396,109.00.

The debtor acquired the property here in question, a 338 acre ranch called the Castle Ranch, by a grant deed from one Bob Witmondt on December 19, 1979. Witmondt had acquired the property one year earlier, on December 29, 1978, from the plaintiffs.

Witmondt, pursuant to the terms of his purchase, was obligated to make a deferred down payment of $289,963.00 on or about June 15, 1979, and another payment of $82,-284.54 on or about June 29, 1979. When these payments were not made, plaintiffs commenced foreclosure proceedings under the aforementioned deed of trust.

The foreclosure sale was scheduled to be conducted on December 19, 1979, the date upon which Witmondt transferred the property to the debtor, and the date the debtor filed for relief under Chapter 11 of Title 11 U.S.C., the Bankruptcy Code.

The hearing on plaintiffs request for relief, which was duly requested by the debtor pursuant to the procedures adopted in this district, commenced on February 8, 1980, within the 30 day requirement of § 362(e), and concluded on February 14, 1980.

At the commencement of the trial, it was determined by this court that the matter would be treated as a preliminary hearing under § 362(e). This ruling was necessitated by the fact that the time for filing an answer to the six count complaint seeking relief from the stay, had not yet expired.

Plaintiffs in their complaint, not only sought relief from the automatic stay, but in the alternative sought adequate protection by way of an order that payments be made as provided in the note and deed of trust if the stay were continued, a shortening of the 120 day exclusive period the debtor has for filing a plan of arrangement under § 1121(b) of the Code, or a dismissal of the proceedings because they were a sham and fraud on the court and creditors.

At the trial, neither side produced the types of appraisals courts have come to rely upon when determining values of properties, that is neither side produced an M.A.I. appraisal.

Plaintiffs, who had the burden of proof on the issue of equity, [§ 362(g)(1)], produced a Mr. McWhorter who has been a realtor in the area where the property is located, for well over 25 years. McWhorter testified at great length about his familiarity with the general area, sales and offers on various properties, zoning, sub-division problems, water problems, etc.

Defendant presented a Mr. Rodolff, who also had been a realtor in the area for a number of years and testified about his familiarity with the property, as well as others in the general vicinity, and some of the other matters McWhorter testified to.

It should be pointed out that the property here in question is, by the testimony of every witness called, a unique property. It consists of 338 acres containing a house, called the Castle, which was built between 1916 and 1921, out of stone and block with walls about 4 feet thick, open beams, walls painted by Indians and containing about 12,000 square feet of space. In addition to the main house, the property contains four smaller living units and a number of out buildings. The property has a lake, stocked with fish, is just east and in front of a water reservoir and has sources of water and other utilities. It is very close to, and a corner of it, fronts on, State Highway 76.

The property is located in the Santa Maria Valley of San Diego County, approximately six miles east of the community of Ramona, on Highway 67.

After listening to the prime witnesses on the issue of value, I have concluded that defendants witness Rodolff, who estimated the value of the property at $5,300.00 per acre, cannot be relied upon.

His knowledge of the valley and his experience with property therein coupled with the comparables he relied upon in arriving at that stated value simply was not credible.

He testified that 75% of his valuation was derived by using basically two comparables which sold for much more than $5,300.00 per acre. But these were small parcels on buildable sites and, according to his own testimony, small parcels in that valley always demand prices several thousand dollars per acre higher than large parcels such as the subject property.

His other main comparable consisted of two 119 acre parcels which sold in 1979 for $2,500.00 per acre. His explanation as to why those parcels were worth so much less than his value for the subject property, simply was not plausible.

I have concluded that Rodolff's testimony of value for the land cannot be relied upon.

McWhorter discussed many of the properties in the valley, both as to recent sales, offers and old sales. In particular he took into account a property just to the northeast of the subject property consisting of 700 plus acres which sold in March of 1979 for about $2,992.00 per acre, as well as other properties of substantial size in the general area.

He explained the problem of subdividing and obtaining maps in the valley, the water and sewer problem and the tree planting moratorium which limits the use of property as avocado or citrus groves.

After being on the stand for the better part of two days, he finally concluded that the property was worth $2,500 per acre on a *cash sale* (emphasis added). He did, however, state that if this property were subdivided, he felt the lots would "sell like hot cakes." I should also point out that his valuation does not include the house.

Several other witnesses testified as to value as well.

A Mr. Landis, the general partner of plaintiff partnerships, gave testimony that the house was worth about $350,000 and the land and building together were worth about what Witmondt had paid for it in December 1978, which, for the whole package was about $4,111 per acre.

Witmondt, as former owner and now as president, chief executive officer and sole shareholder of the debtor, agreed with his appraiser, Rodolff, that the land was worth $5,300 per acre and the house $920,000, for a total value of $2,711,400.00.

When asked what it was that occurred between December 1978 and February 1980, that caused such a tremendous increase in value, his explanation was less than plausible. In fact, other than the statement that he "made a good buy," there was no explanation.

To buttress that valuation, the debtor introduced a purported offer it had received for $2.2 million. An analysis of that offer leads me to the conclusion that it is no more than the first step leading to what may some day be an offer. True, it does not contain any contingencies relating to obtaining a subdivision map or rezoning, which usually appear in offers by developers and/or speculators. But, it does contain nebulous provisions for subordination agreements and release prices which in my opinion make it at least an illusionary offer and no real evidence of value.

Based on all of the evidence I have heard, I have concluded that this property has a value, given sufficient time to properly market it, of about $3,500 per acre or $1,183,000, and that the main house has a value of about $500,000, for a total value of $1,683,000.

There is presently owing on the deed of trust held by the plaintiffs the sum of approximately $1,537,503.00, exclusive of taxes and attorneys fees. Interest accrues at the rate of approximately $9,753.00 per month.

It is therefore apparent that the debtor has little or no equity in the property.

It is also apparent that the property, which is the debtor's only asset, other than some personal property of nominal value, is necessary to an effective reorganization.

Before discussing the law in this matter, I should mention that throughout this proceeding much testimony was presented by Witmondt relating to an alleged "deal" he had worked out with Landis, plaintiff's general partner, by which the foreclosure sale would be continued on certain conditions. No satisfactory evidence was presented that Witmondt would, or could, perform. In fact at one point he even admitted that he was toying with plaintiffs by offering only half of the payment he was to make. I can therefore find no binding agreement, despite two unsigned draft agreements presented to me at trial.

There was also some allusion to the possibility of plaintiffs agreeing to subordinate to other financing. If such possibility ever existed, it was rejected most strongly by Landis.

What we have here in the form of a Chapter 11 proceeding under the Code is nothing more nor less than a Chapter XII proceeding under the Bankruptcy Act, with the exception that the debtor is a corporation. It is simply a one asset case in which the debtor either has to sell his property, refinance it, or seek new capital to solve its problems.

In order to accomplish those ends, the debtor must have equity in the property, which is nonexistent here.

In order to continue the stay in effect as a result of this preliminary hearing, under § 362(e), I must find that there is a reasonable likelihood that the debtor will prevail at any final hearing held pursuant to § 362(d).

§ 362(d) speaks of granting relief from the § 362(a) stay, either by modifying, terminating, annulling or conditioning it. Any of those latter can be done for cause, which is not defined, including the lack of adequate protection, or if the debtor does not have an equity and the property is not necessary for effective reorganization.

I have concluded that there is not a reasonable likelihood that the debtor will prevail at a final hearing because although the property is clearly needed for a reorganization, the debtor has no equity in the property.

The value of the secured parties interest in that property is being eroded at the rate of $9,753.00 per month, which is the amount of interest running on the debt, without any concomitant increase in value. In order to be adequately protected, as that term is used in § 361, at a minimum the debtor would have to be able to pay those sums on a monthly basis. It cannot do so. It has no

assets other than the property here involved.

Since the debtor will not be able to adequately protect the plaintiffs interest in the property it is unlikely that it could prevail in a § 362(d) hearing.

As I indicated earlier, this case is a typical Bankruptcy Act Chapter XII proceeding. The debtor's predecessor here gambled on the hopes that he would be able to sell this property for a quick profit. In fact he entered into a contract to advertise this property for sale before he closed escrow in December 1978. His hopes did not come to fruition. There is no equity and no method of adequately protecting plaintiffs.

Under the Code, this type of case can be solved, as it could be under the Act, by a sale, refinance, or infusion of new capital.

The debtor and its predecessor in interest have already had 14 months in which to sell or refinance without any success.

With no equity, it is unlikely that new capital can be attracted to solve its economic problem.

Since these solutions seem highly unlikely, it would appear that the debtors ability to prevail at any final hearing under § 362(d) is also unlikely.

Since I cannot find that the debtor is likely to prevail at that hearing, I believe the stay must be annulled.

The whole purpose of the statutory scheme of § 362, as I understand it, was to relieve a creditor from the stay imposed upon him in a relatively expeditious manner where no good reason for continuing the stay exists. This is one of those cases.

The stay is to vacate.

Counsel for plaintiff shall prepare Findings of Fact, Conclusions of Law and a Judgment in conformity with this Opinion.