In re ARIES ENTERPRISES, LIMITED, d/b/a The Gandy Dancer, Debtor.

SECOND AND E STREETS, N.E., ASSOCIATES, a Limited Partnership, Plaintiff,

v.

ARIES ENTERPRISES, LIMITED,

and

Government of the District of Columbia, Defendants.

Bankruptcy No. 79–00221.
Adversary Proceeding No. 79–0004.

United States Bankruptcy Court, District of Columbia.

April 2, 1980.

Dennis J. Faucher, of Saul, Ewing, Remick & Saul, Philadelphia, Pa., for plaintiff.

Treston E. Moore, Washington, D. C., for defendant Aries.

Frank J. McDougald, Jr., Asst. Corp. Counsel for the District of Columbia, Washington, D. C., for defendant D. C. Govt.

## MEMORANDUM OPINION

ROGER W. WHELAN, Bankruptcy Judge.

(Relief From Stay Provisions of Section 362; Determination of Priority Between Security Interest and D.C. Tax Lien)

This adversary proceeding [1] instituted by the plaintiff, Second and E Streets, N.E., Associates, as landlord and secured creditor of the Defendant-Debtor, Aries Enterprises, Limited, d/b/a The Gandy Dancer, seeks relief from the stay provisions of the Bankruptcy Code (11 U.S.C. § 362), and further seeks a declaration of its rights as a secured creditor with a perfected security interest in collateral located at 501 Second Street, N.E., Washington, D.C.,[2] vis-a-vis certain tax liens of the District of Columbia Government which arose and were levied upon subsequent to the perfection of plaintiff's security interest. After due consideration of all the evidence, testimonial and documentary, at the time of trial, the Court concludes that the Plaintiff is entitled to relief pursuant to the provisions of 11 U.S.C. § 362, and further determines that the District of Columbia Government is entitled to priority by reason of its tax lien insofar as the collateral at issue is involved.

The corporate debtor, Aries Enterprises, Limited, operated a restaurant known as "The Gandy Dancer" at 200 E Street, N.E. until September 26, 1979, at which time the business was closed by reason of the D.C.

---

1. The Defendant-Debtor, Aries Enterprises, Limited, also filed a cross-claim against the District of Columbia Government for damages resulting from the tax levy, and at the time of trial, this cross-claim was voluntarily dismissed based upon the fact that no evidence was adduced which would support the cause of action against the District of Columbia for such damages.

2. The collateral consists primarily of restaurant equipment and appliances as set forth and described in a duly filed financing statement dat-

tax levy.[3] The business premises were occupied by the debtor pursuant to lease agreements dated March 13, 1976, and May 31, 1976;[4] and the rental arrears accrued through February 1980 were in the total sum of $25,017.56 (See Plaintiff's Exhibit 13). No rent had been paid to the Plaintiff, as landlord, since the month of August, 1979, and, pursuant to the lease agreements, monthly rent accrued at the rate of $3,260 per month. On October 26, 1979, after submitting prior notice of default in writing, the plaintiff secured a default judgment in the District of Columbia Superior Court and on that date a writ of restitution was issued for recovery of the aforesaid premises. See Plaintiff's Exhibits 4 and 5. On that same date, the Defendant-Debtor filed its Chapter 11 case with the U.S. Bankruptcy Court for the District of Columbia. Steps being taken by the United States Marshall to recover possession of the premises for the plaintiff-landlord were stayed as a result of the filing of the aforesaid Chapter 11 case.

Moreover, the plaintiff, by reason of an assignment dated May, 1976, acquired rights as a secured creditor to certain collateral set forth and itemized in the financing statement dated May 12, 1976. The promissory note, security agreement and financing statement (executed originally between Aries Enterprises, Limited, as debtor, and Alto, Inc., as secured creditor) were executed by the parties on the aforesaid date and the financing statement was duly recorded with the D.C. Recorder of Deeds on August 5, 1976. The balance due under the aforesaid note and security agreement as of July 15, 1979, was in the full sum of $6,600.93. See Plaintiff's Exhibit 15.[5] The value of the collateral, which is subject to plaintiff's security interest, and is further reflected and itemized in an appraisal dated November 23, 1979, is $8,100.00. The aggregate appraised value of all equipment, fixtures, and inventory located at the debtor's business premises as set forth in the aforesaid appraisal is in the full sum of $21,777.50. See: Plaintiff's Exhibit No. 11.

The debtor's business has been closed and has not operated since its closing on September 26, 1979, by reason of the District of Columbia Government's tax levy on that date. The premises are in extremely poor condition[6] and would require substantial expense on the part of the debtor in order to restore the restaurant to a functioning business status. Other than the physical assets located at the business premises (See: Debtor's Schedules B–2c, d, j, k, and n), which for the most part are subject to security interests other than the plaintiff's, the debtor has no liquid assets. Despite the testimony of the debtor's witness, Mr. Adams,[7] the court finds that there is no plausi-

ed May 12, 1976. See: Plaintiff's Exhibit No. 7.

**3.** Certificates of delinquent taxes were properly filed by the District of Columbia Government for sales taxes and withholding taxes, and aggregated $72,525.42 as of September, 1979. Included in the aforesaid sum was a small amount due and owing for franchise taxes as well. Tax liens for an additional $21,125.38 were filed on October 26, 1979. See Plaintiff's Exhibit No. 9.

**4.** As reflected by the separate lease agreements and testimony adduced at the trial, the debtor leased space for the operation of the restaurant (lease dated March 13, 1976) as well as additional office space for use in connection with the restaurant (lease dated May 31, 1976).

**5.** The amount due as of the filing of the plaintiff's complaint was in the full sum of $8,251.16, plus interest and late charges from July 12, 1979 (See Count 2, paragraph 13 of the plaintiff's complaint). This amount reflects accrued interest and attorney's fees as set forth in the aforesaid promissory note.

**6.** Testimony adduced at the time of trial by both plaintiff and defendant clearly demonstrate that the premises would have to be cleaned and exterminated, employees rehired, inventory restocked, and insurance reinstated, before the debtor could begin operations as a viable business at this location.

**7.** Debtor's witness, Mr. Adams, testified that he was "interested" in this restaurant business and had submitted a written offer for this acquisition of the Gandy Dancer. However, Mr. Adams' testimony was extremely vague as to the specific terms of the acquisition and he was further unclear as to what type of sale was envisioned. In fact, no evidence of any written offer was received at the time of trial and the Court further concludes, based on the testimony received, that this witness was not fully

ble basis for the injection of new operating capital or the sale of the business itself.

Based on the above facts, which indicate that adequate protection would not be available, the plaintiff seeks recovery of the subject real estate as landlord, and because of the tax liens filed by the D.C. Government seeks a further determination by this Court as to the priority of its perfected security interest, vis-a-vis, the asserted priority of the District of Columbia Government.[8]

## CONCLUSIONS OF LAW

### I. Relief From Stay Provisions—11 U.S.C. § 362.

It is clear from the express provisions of 11 U.S.C. § 362, and the legislative history surrounding its enactment[9], that although all creditor action is stayed upon the commencement of a case under Title 11, that creditors are entitled to relief when the debtor fails to sustain its burden of proof as to certain key requirements. Pertinent to the issues in this pending adversary proceeding, is the express language of Section 362(d)(1) and (2) which states:

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

As to plaintiff's request for the recovery of the subject real property occupied by the debtor pursuant to lease agreements, and considering that the burden of proof is upon the debtor as to all matters excepting the issue of debtor's equity, there is clearly "cause" for the granting of such relief to the plaintiff. The facts of record clearly demonstrate that not only are there substantial rental arrears,[10] but more importantly in the context of a Chapter 11, the debtor would have no financial means to comply with the curative provisions of 11 U.S.C. § 365.[11] More relevant to the existing facts of this proceeding, is the undisputed fact that the lease terminated prior to the filing of the Chapter 11 and, therefore, the curative provisions of Section 365 would not be applicable or available to the debtor. Even assuming that the debtor's legal argument as to the invalidity of the D.C. Superior Court's default judgment is correct, there would still be rental arrears accrued prior to the filing of the Chapter 11, and it is clear from the evidence of record, that written notice was duly directed to the

---

aware of the legal implications flowing from the filing of the Chapter 11 case.

**8.** Because of the mandatory time limits set forth in Section 362 of the Code, the Court entered an order for relief in favor of the plaintiff as to the defendant-debtor, on February 27, 1980. *See:* Court order dated February 27, 1980. No order was, however, entered as to the relative rights between the plaintiff, as a secured creditor, and the District of Columbia Government, as a tax lien creditor.

**9.** See: House Report 95–595, 95th Congress—1st Session, 340 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

**10.** As of February 1980, the rental arrears were in excess of $25,000.00, and even if the security deposit could properly be applied to a reduction

of these arrears, there would still be an amount due in excess of $18,000.00.

**11.** Section 365(b)(1) provides that:

"If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, from any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease."

debtor which clearly evidenced an intent to terminate the lease pursuant to its express provisions. *See*: Plaintiff's Exhibit 14, paragraph 14a, b and d, and paragraphs 15a as to lease dated May 31, 1976. According to the lease agreements, the failure to pay rent, to maintain insurance, and to conduct business operations clearly constituted grounds for default under the existing leases and upon notice of such defaults, the landlord took immediate steps to recover the premises. It is the court's opinion that these steps were sufficient in the legal sense, to terminate the landlord and tenant relationship. *See*: 49 Am.Jur.2d, *Landlord and Tenant*, § 900, at 960–961. The filing of this Chapter 11, and the stay provisions effected by § 362, were the only events that prevented the landlord from in fact recovering the subject premises. Based, therefore, on the evidence of record, the defendant-debtor has failed to sustain its burden of proof;[12] and the landlord is entitled to the recovery of its premises.

As to the recovery or reclamation of the restaurant equipment located at the business premises which is collateral for the security interest claimed by the plaintiff as a secured creditor, the provisions of Section 362(d)(2) provide that:

"(d) . . . the court shall grant relief from the stay . . .

(2) With respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

As to the issue of equity, the evidence is overwhelming that the amount due to the plaintiff as a secured creditor is in excess of $8,000 and the appraised value of the collateral allocated to the plaintiff's security interest is only $8,100.00. More relevant to the issue of "effective reorganization", is the fact that the total appraised value of all the physical assets located at the business premises is only slightly in excess of $21,000.00, and the secured claims (excluding tax liens and disputed obligations) set forth in debtor's schedule A–2 (*See also*: Plaintiff's Exhibit 8) aggregate more than $60,000. Furthermore, in considering the issue of equity in the property as well as the issue as to effective reorganization, the tax liens of the District of Columbia clearly are secured claims within the meaning of the Bankruptcy Code. 11 U.S.C. § 506(a) provides that:

" . . . an allowed claim of a creditor secured by a lien on property in which the estate has an interest . . ."

is a secured claim. And to the extent that such lien cannot be avoided by the debtor, it must be recognized as a secured claim and cannot, therefore, be dealt with under the confirmation provisions of 11 U.S.C. § 1129(a)(9)(C) which is applicable by its own terms to general unsecured priority claims under Section 507(a)(6) of the Code. In this case, the evidence establishes that the tax liens were properly perfected prior to the filing of the Chapter 11 and accordingly, 'the strong arm' provisions of Section 544(a) would not be applicable. Cf: *Lewis v. Manufacturer's National Bank of Detroit*, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961). The only other avoiding powers available to a debtor in Chapter 11 would be § 545 of the Bankruptcy Code, and since the collateral involved in this proceeding is equipment utilized in a restaurant business, the avoiding provisions of § 545(B) would not be applicable. Finally, it is clear that the imposition of the lien within 90 days would not be a preference within the avoiding powers of § 547 because § 547(c)(6) specifically excludes statutory liens.[13] For

---

12. As to the burden of proof borne by plaintiff, i. e., as to the issue of equity, the court clearly concludes that there is sufficient evidence to demonstrate that there is no equity in the subject property.

13. The District of Columbia Government's tax liens are clearly statutory liens within the definitions provided in § 101(38) of the Bankruptcy Code, which defines a statutory lien as:

" . . . lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent

these reasons, the secured tax claims must be considered in the context of whether there is equity in the property at issue and, in turn, whether or not the debtor can provide adequate protection to the secured creditor. In view of the appraised value [14] of these assets which is only slightly in excess of $21,000.00, and after considering the amount of taxes accrued through September, 1979 alone, it appears that there would be insurmountable obstacles for the debtor in respect to structuring an "effective" reorganization. See: § 362(d) of the Bankruptcy Code.

Furthermore, the evidence of record is overwhelming to the effect that such property would not be necessary for an "effective" reorganization. While there can be no argument that the subject collateral, is in fact, necessary to the operation and maintenance of this restaurant business, were the court to permit its continuance, the court must consider whether there can be, with some reasonable degree of probability, an "effective" reorganization. *See*: § 362(d)(2)(B). The following facts, among others,

clearly mitigate against an effective reorganization, i. e., the staggering amount of secured claims which completely erase an equity base; the fact that the business has now been closed for over six months; and because of the further fact that a substantial amount of equity (or debt) capital would be required just to "start up" the business. Accordingly, the court concludes that there could be no effective reorganization within the meaning of § 362(d)(2)(B). See: 2 *Collier on Bankruptcy*, ¶ 362.07[2] (15th Edition 1979).[15] Finally, it is clear from the aforegoing factual analysis, that the debtor could furnish no meaningful adequate protection to the secured creditors in this case and, accordingly, the plaintiff is entitled to relief by way of recovery of the subject premises.

## II. Issue of Priority Between Plaintiff As Secured Creditor And District of Columbia Government As Tax Creditor.

The remaining issue in this proceeding involves a conflict between the D.C. tax lien [16] and a prior perfected purchase money

on a statute and whether or not such interest or lien is made fully effective by statute;"

14. Although in most Chapter 11 cases it is likely that the court would utilize a "going concern" value, [Cf: *Chemical Bank and First Pennsylvania Bank v. American Kitchen Foods, Inc.* (In re: *American Kitchen Foods, Inc.*) 2 Bankr.Ct.Dec. 715 (B.C.Me.1976)] there is no plausible basis for projecting such a value in this case. This is so particularly where the evidence of record reflects that a forced sale of the business might be the only available option to the debtor.

15. *Collier on Bankruptcy* clearly refers to the fact that "the reference to an 'effective' reorganization should require relief from the stay if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility consideration". 2 *Collier on Bankruptcy* ¶ 362.07[2] at 362–48 (15th Edition 1979). Here there is not only creditor dissent, but there is a complete lack of any basis for a feasibility consideration.

16. The pertinent statutory provisions of the District of Columbia Code relating to sales tax and withholding tax liabilities, are set forth as follows:
"Whenever the business or property of any person subject to tax under the terms of this chapter, shall be placed in receivership or

bankruptcy, or assignment is made for the benefit of creditors, or if said property is seized under distraint for property taxes, all taxes, penalties, and interest imposed by this chapter for which said person is in any way liable shall be a prior and preferred claim. Neither the United States marshal, nor a receiver, assignee, or any other officer shall sell the property of any person subject to tax under the terms of this chapter under process or order of any court without first determining from the Collector the amount of any such taxes due and payable by said person, and if there be any such taxes due, owing, or unpaid under this chapter, it shall be the duty of such officer to first pay to the Collector the amount of said taxes out of the proceeds of said sale before making any payment of any moneys *to any judgment creditor or other claimants of whatsoever kind or nature.* Any person charged with the administration or distribution of any such property as aforesaid who shall violate the provisions of this section shall be personally liable for any taxes accrued and unpaid which are chargeable against the person otherwise liable for tax under the terms of this section." D.C.Code, Title 47, Section 2609 (1973) (emphasis mine). With respect to the issue of priority for such withholding taxes, the provisions of D.C.Code, Title 47, Section 1586h (1973) specifically provides:

security interest under the Uniform Commercial Code. As explained prior in the Court's Findings of Fact and Conclusions of Law, there is no factual dispute that the tax liens arose subsequent to the perfection of the plaintiff's purchase money security interest and further represent tax obligations which themselves arose subsequent to the same purchase money security interest.[17]

■ Although the statute provides for a seemingly absolute priority over all interests, conflicts with prior perfected security interests in particular provide a real conflict—for no other reason than the well established principle of common law that prior lien interests are usually first in time and therefore first in right. However, the present conflict is one between a competing security interest arising from the provisions of the Uniform Commercial Code and a statutory tax lien, which is not included within the priority provisions of the Uniform Commercial Code. *Cf*: D.C.Code, Title 28, § 9–310 (which section of the UCC is strictly limited to statutory liens which arise ". . . in the ordinary course of . . . business (for) services or materials with respect to goods subject to a security interest, . . ."). The District of Columbia tax lien in particular would appear to participate or partake of the absolute priority which is granted to the United States Government under Revised Statutes 3466 (31 U.S.C. § 191). In fact, in *U. S. v. Saidman*, 97 U.S.App.D.C. 344, 231 F.2d 503 (1956) the court expressly held:

"Every tax imposed by this subchapter, and all increases, interest, and penalties thereof, shall become, from the time it is due and payable, a personal debt, from the person or persons liable to pay the same to the District and shall be entitled to the same priority as other District taxes, . . ."

17. The evidence of record reflects that in excess of $70,000.00 of tax liens accrued by September 26, 1979, and were perfected as of that date when the debtor's business operations ceased by reason of the D.C. tax levy. In view of the total appraised value of all of the assets at issue, it is unnecessary for this court to decide further whether the additional liens which were imposed on October 26, 1979, the date of the filing of the Chapter 11, were additional perfected liens as of that date.

"In *District of Columbia v. Greenbaum*, (1955), 96 U.S.App.D.C. 168, 171, 233 F.2d 633, 636, we stated in footnote 13 of the opinion that the scope of Section 47–2609 will be similar to that of Section 3466 of the Revised Statutes in local insolvency proceedings, as distinguished from bankruptcy proceedings under the Federal Bankruptcy Act. . . ."

Although the absolute priority statute is clearly not applicable to bankruptcy cases[18] and is so argued by the plaintiff, the situation here is somewhat unique and, in the court's opinion, does not warrant the employment of bankruptcy priorities. This court's prior ruling regarding the rights of the plaintiff clearly removes the subject asset from the debtor's estate and, accordingly, there is no longer any need or rationale for the employment of the priorities of the Bankruptcy Code or the subordination provisions thereunder as between two parties who, as a result of this ruling, are not concerned with the relative priorities set forth in Section 507 of the Bankruptcy Code.[19] The present conflict between the secured creditor and the District of Columbia Government, in reality, has no bearing on any provisions of the Bankruptcy Code. Accordingly, it is proper under these circumstances to determine the issue of priority by resort to non-bankruptcy legal principles.

The statute granting a right of priority over ". . . any judgment creditor or

18. 31 U.S.C.A. § 191 now specifically provides that: "The priority established under this section does not apply, however, in a case under Title 11 [of the United States Code]."

19. The subordination of tax liens as called for in Section 724 of the Code applies only to liquidation cases and, at any rate, there is clearly no equity in the property for a trustee to administer, assuming a conversion of the case to Chapter 7. Plaintiff's reference to the established priorities, set forth in Section 507, is clearly not applicable as this section pertains to unsecured tax claims only. *See*: 11 U.S.C. § 507(a)(6).

other claimants of whatsoever kind or nature" is predicated on the express statutory language of the District of Columbia Code. Decisional case law in the District of Columbia interpreting these provisions has consistently granted priority to the Government. Of course, these cases were concerned with the issue of "choateness" or priority in a different sense. In *D.C. v. Hechinger Properties Company*, 197 A.2d 157 (1964), a D.C. Court of Appeals case, the conflicting lien was deemed to arise subsequent to the District of Columbia tax lien; and in *District of Columbia Redevelopment Land Agency v. 11 Parcels of Land*, 589 F.2d 628 (D.D.C.1978), the exact issue was not decided by the Court. An assessment against real estate was deemed equivalent to a tax and was accorded priority over a deferred purchase money deed of trust; however, the exact issue as to priority between a tax lien and a prior perfected purchase money security interest was obviously not addressed by the court in this latter case. A recent District of Columbia Superior Court ruling, *Malakoff v. Walter E. Washington, et al.*, C.A. 369–78, (D.C.Superior Ct., April 3, 1979), however, addressed itself to the specific issue now before this court, and as to both sales and withholding taxes, granted priority to the District of Columbia Government.

■ Moreover, as addressed by the District of Columbia Government, the constitutionality of such tax provision is now well established. *See*: 69 Am.Jur.2d, *Secured Transactions* § 514 (1973). Furthermore, it is clear that the overwhelming number of state decisions dealing with this issue of priority between state tax liens and prior security interests (or chattel mortgages) consistently grant the tax lien priority. 72 Am.Jur.2d, *State and Local Taxation* § 898 (1974), and cases cited thereunder. Implicit in the premise for the granting of priority for tax liens is the recognition that taxing authorities are involuntary creditors and have no choice as to who will be their

debtor and that the legislator has, accordingly, legislated the issue of priority in favor of the government. *See, e. g., Burfiend v. Hamilton*, 20 Mont. 343, 51 P. 161 (1897); *Pasquarillio v. Arena Twyne and Cordage Company*, 108 N.J.Eq. 491, 155 A. 608 (1931) (Court of Chancery of N.J.); *Berry v. Davis*, 158 N.C. 170, 73 S.E. 900 (1912) as examples of state tax liens taking precedence over prior chattel mortgage interests. Furthermore, since Congress ultimately legislates for the District of Columbia and because the D.C. tax lien has been elevated and given the same status as a federal governmental priority, on the same status as Revised Statutes 3466, *U. S. v. Saidman, supra*, there is a further compelling reason for the award of priority to the District of Columbia Government in this proceeding. In the *Saidman* case, *supra*, the landlord's lien was deemed to be a prior interest but was not deemed to be "choate" within the meaning of such cases as *People of State of Illinois ex rel. Gordon v. Campbell*, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348 (1946), and *U. S. v. Gilbert Associates*, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953), simply because the lien was not ". . . perfected when, on the date of the assignment, the debtor has not been divested of title to, or possession of, the property involved." *U. S. v. Waddill Company*, 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945). In this proceeding, the District of Columbia Government has already levied upon the property as early as September 26, 1979, and the secured creditor had not yet obviously exercised its rights to retake the collateral under applicable provisions of the Uniform Commercial Code. *See*: D.C.Code Title 28, § 9–503. Accordingly, under federal "choateness" standards, the lien of the plaintiff, as a secured creditor, although prior in time, was still an inchoate lien, vis a vis, the absolute priority statute.[20]

For the reasons set forth above in this memorandum, the court concludes:

---

20. It is interesting to note that the Supreme Court has never finally resolved the issue as to whether or not the priority set forth in the absolute priority statute can defeat a "fully perfected and specific" lien. *See: People of the State of Illinois ex rel. Gordon v. Campbell, supra.*

1. That the debtor is not entitled to continuation of the stay provisions of Section 362 as to the plaintiff, District of Columbia Government, and that the plaintiff, Second and E Street Associates, is entitled to recovery of the subject real property and all improvements thereon;

2. That as to all collateral set forth and described in plaintiff's Exhibit A (*See* Court Order of February 27, 1980), the defendant, District of Columbia Government, by reason of its priority tax lien, shall have the right to remove and/or otherwise dispose of said collateral.