In re ACCENT ASSOCIATES, INC., Debtor.

GUARANTY–FIRST TRUST COMPANY, Plaintiff,

v.

ACCENT ASSOCIATES, INC., Defendant.

Bankruptcy No. 79–01875–JG. Adv. No. A79–0001.

United States Bankruptcy Court, D. Massachusetts.

Feb. 10, 1981.

Richard A. Savrann, Kunian, Savrann, Miller & Grossman, Boston, Mass., for plaintiff.

C. Hall Swaim, Hale & Dorr, Boston, Mass., for Urban National Corp.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The plaintiff seeks relief from the provisions of the automatic stay pursuant to 11 U.S.C. Section 362.

The plaintiff, Guaranty-First Trust Company (the Bank) alleges a first mortgage on real estate owned by the Chapter 11 debtor, Accent Associates, Inc. The United States Small Business Administration (SBA) is the alleged holder of a second mortgage which was assigned to the Bank as collecting agent. The real estate is further encumbered by a third mortgage held by Urban National Corp (UNC). The debtor, having decided not to defend this adversary proceeding, has allowed Urban National to defend and to be the proponent of a Plan of Reorganization. Although there is minor contention that the validity of neither the first nor second mortgages has been proved at trial, both the plaintiff and Urban National in their respective proposed findings of fact, submitted after hearing, suggest the court find these mortgages to be valid, and the court so finds.

The plaintiff has alleged it is entitled to relief since the debtor cannot provide adequate protection as required by Section 361 of the Bankruptcy Code. The Bank further contends that the value of the property is less than the amount of the first and second mortgages, resulting in no equity in the debtor. Included in the plaintiff's argument is the observation that the amended Plan of Arrangement, submitted by Urban National Corp is not designed to allow the debtor in possession to reorganize.

After a full evidentiary hearing this court finds that the plaintiff is entitled to the relief sought.

The real estate involved consists of two contiguous parcels of land in the towns of Framingham and Natick, Massachusetts. The Framingham parcel, which is approximately 11 acres, is set back from Worcester Road (Route 9) and is business zoned. A 30,000 square foot building, formerly operated as a restaurant and banquet facility, is situated on approximately 3.7 acres. The remaining acreage in Framingham is partially paved and was used for parking, the residue being undeveloped. The Natick portion of approximately 18 acres is residentially zoned for single family residences, is landlocked and unimproved. The entire frontage on Route 9 for all acreage is only 40 feet, with a limited access to Route 9 by an eighty foot right of way.

The debtor has ceased operations, the building has been vacant for at least one year and is in serious need of repair. The parties introduced conflicting evidence of

the highest and best use for the Framingham parcel through their respective appraisers.

The plaintiff's expert concluded that the highest and best use of this property was for the development of an office building or office park, as is permitted by the present zoning. The estimate of fair market value, based on the market data approach for this property was $1,085 million before deductions of twenty-five per cent for entrepreneurial profit and risk. Including the Natick land in this development brings the total property value to $1.127 million[1] before adjustments. The fair market value therefore, after the above adjustment is $850,000.00.

Both parties seem to be in agreement that for purposes of these proceedings, a fair valuation of the Natick land is $42,000.[2] However, there is a great deal of contention over the Framingham parcel.

Urban National introduced testimony that the building on the Framingham parcel should continue as a restaurant, with the remaining Framingham acreage to be used for motel development, a compatible use. Valued as a special purpose building and using the cost approach, the severable restaurant parcel is given a value of $893,000. The remaining 6.5 acres (to be used as a motel) is valued at $100,000 per acre or $650,000.

Although credible evidence was introduced that major hotel/motel chains would pay approximately $100,000 an acre for a premium site, there was no basis from which this court could find that the Framingham land is, or would be, considered "premium". Furthermore, it is apparent that special permits from the Town of Framingham as well as other government permits would be needed for such an undertaking. Accordingly, the court finds that the $1.543 million value for the Framingham parcel must be adjusted based on the speculative nature of the development plan.

Furthermore, the actual Plan of Arrangement as proposed by Urban National contemplates a severance of the Natick land and a sale of the Framingham property subject to an easement for access to Natick which may also impact adversely on the Framingham parcel's marketability.

As of July 9, 1980, the balance owed on the first mortgage, including interest, late charges, maintenance, taxes and insurance was $639,446.20. The second mortgage balance on that date was $516,621.61. The property is accruing costs, including principal, interest, taxes, maintenance and insurance of approximately $14,000 per month. Considering the two expert opinions on fair market value and considering the number of credible factors before me which dictate an upward adjustment of the lower value and a downward adjustment of the higher value, I find that the range of value for this property is more likely to be between $950,-000.00 and $1.275 million. At best, there is little equity in this property for the debtor, and more probably—no equity.

Urban National Corp's proposed Plan of Reorganization provides for a transfer of all the debtor's real property to a trust. The trust would immediately sell the Framingham parcel, subject to an easement for access to the Natick land. The mortgagee's claims would attach to the proceeds of the sale. Notes, with a three year maturity date, at the same interest rate as the present mortgages, would be issued by the trust for any deficiency claims and would be secured by the retained Natick parcel. The trust would then attempt to develop and sell the Natick land, which would involve a rezoning change for multi-family use. Urban National Corp has also offered to guarantee the purchase of the Natick property at the maturity of said notes for $42,000. At no point has the debtor showed any active interest in Urban National Corp's plan or expressed any intent to participate.

1. Appraisal of Natick land alone, according to this approach is $42,000 (Transcript Vol. I, pp. 133–34 (7/9/80)).

2. Plaintiff's appraiser, Transcript, Vol. I, pp. 133–34 (7/9/80); UNC's proposed Finding of Fact, # 4.

■ The sole issue before this court is whether the plaintiff, representing both the first and second mortgages, is entitled to relief from the automatic stay. Section 362(d) of the Bankruptcy Code provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

■ The adequate protection offered to this plaintiff is in the form of a Plan of Reorganization. Although the Bankruptcy Code, in Section 361 specifies three methods for providing a secured creditor with adequate protection,[3] the legislative history makes it clear that these are not intended to be exclusive nor exhaustive.[4] The proposed Plan does not contemplate periodic cash payments nor additional or replacement liens. Rather Urban National Corp contends that the Plan is intended to provide the first and second mortgagees with the indubitable equivalent. This court does not find that the express purpose is achieved.

From the facts derived at trial, it appears to this court that the bifurcation of the twenty-nine acre parcel and the creation of an easement over the Framingham land may substantially alter and diminish the position of the secured parties. A myriad of variables may adversely impact on the sale of the severed Framingham parcel which will not provide the indubitable equivalent of a present sale of the entire parcel. Furthermore, although Urban National Corp has argued that there is a sufficient equity cushion in the real estate to provide adequate protection, this court has found it not to be likely.

■ There being a lack of adequate protection and no substantial equity in the property (if any at all), the only remaining issue is whether the stay can be continued because, arguably, the property is necessary for an effective reorganization. "Indispensability of the property to the debtor's survival and hope of rehabilitation is not enough, of course, to justify continuation of the stay when rehabilitation is hopeless or the stay threatens injury to the lienor's security." Kennedy, "The Automatic Stay in Bankruptcy", 11 U.Mich.L.J.Ref. 179, 244 (1978).

The case law interpreting Section 362(d) appears to consistently hold that there must be a reasonable possibility of an *effective* reorganization within a reasonable time. (emphasis added). *In the Matter of Anchorage Boat Sales, Inc.,* 4 B.R. 635, 6 B.C.D. 495 (Bkrtcy.E.D.N.Y.1980); *In re Aries Enterprises, Ltd.,* 3 B.R. 472, 6 B.C.D. 280 (Bkrtcy.D.D.C.1980); *In the Matter of Terra Mar Associates,* 3 B.R. 462, 6 B.C.D. 150 (Bkrtcy.D.Conn.1980). The proposed plan before this court is premised solely on contingencies with the Natick parcel and the ability to effectuate them. Even Urban National Corp anticipates that if re-zoning changes are not obtained, it may be forced to purchase the Natick parcel as it currently stands, three years down the road.

This court finds that the plaintiff has not been offered adequate protection, and that no meaningful plan of reorganization has been proposed that might result in a suc-

---

**3.** Section 361: Adequate Protection may be provided by—

(1) periodic cash payments to the extent of a decrease in the value of the collateral; or
(2) additional or replacement liens to compensate for a decrease in value of the collateral while the stay remains in effect; or

(3) other relief which will result in the realization by the secured creditor of the indubitable equivalent of his interest in the collateral.

**4.** House Report No. 95–595; 95th Cong. 1st Sess. (1977) pp. 338-40, U.S.Code Cong. & Admin.News 1978, 5963.

cessful reorganization within a reasonable time.

Accordingly, the plaintiff is entitled to relief under 11 U.S.C. Section 362(d).