**In re BLEHM LAND AND CATTLE COMPANY, Debtor.**

**Bankruptcy No. 86 F 1689.**

United States District Court, D. Colorado.

Feb. 12, 1987.

Gregory L. Williams, Denver, Colo., for appellant.

Jon B. Clarke, Englewood, Colo., for the trustee/appellee.

Elizabeth Greenberg, Denver, Colo., for the creditor/appellee.

Caroline Fuller, Denver, Colo., for debtor/appellee.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Chief Judge.

Travelers Insurance Company ("Travelers") brings this appeal from the United

States Bankruptcy Court for the District of Colorado, challenging the bases for the court's denial of Travelers' Application for Super Priority Administrative Claim ("Application"). After examination of the briefs and appellate record, the Court has determined that oral argument would not be of material assistance in the determination of this appeal. Bankr.R. 8012.

## I.

Blehm Land and Cattle Company ("Debtor") filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq., on May 23, 1983. At the time of the bankruptcy filing, Travelers held first deed of trust interests in all of the Debtor's real property and improvements located in Weld County, Colorado. The Debtor's primary business at the time of the filing was the operation of a feed lot on its Weld County property.

After the bankruptcy filing, the Debtor generated little income from its feedlot operation. During November and December of 1983, the Debtor entered into negotiations with Arvin Martensen, the President of E–VAP, Inc. ("E–VAP") to lease a portion of the Debtor's real property for the purpose of constructing an oil field waste water disposal system. Implementation of the system required construction of surface storage ponds and related equipment on the land leased from the Debtor. At some point during November or December of 1983, the Debtor entered into written agreements with E–VAP to lease the property.

During the Spring or early Summer of 1984, Travelers first learned of the Debtor's intent to permit construction of a waste water disposal system on the property, and informed E–VAP that it would not agree to the construction of the system. Travelers filed a Motion for Temporary Restraining Order and Preliminary Injunction. After hearings before United States Bankruptcy Judge Roland J. Brumbaugh and United States District Court Judge John P. Moore, a Temporary Restraining Order and Preliminary Injunction issued, precluding the Debtor and E–VAP from going forward with construction of the waste water disposal system.

On June 28, 1984, M.E. Koontz ("Trustee") was appointed as Chapter 11 Trustee for the Debtor. At the time of the Trustee's appointment, the Debtor was no longer conducting its feedlot operation. All income to the estate during the Chapter 11 proceeding was expected to be generated by the proposed E–VAP lease or, to a much lesser extent, from the lease of other portions of the real property. After his appointment, the Trustee filed a motion to withdraw assumption of the proposed lease. The motion was granted by the Bankruptcy Court on October 5, 1984.

After his rejection of the lease agreement between E–VAP and the Debtor, the Trustee entered into and successfully completed negotiations for a new lease agreement with E–VAP. However, the Trustee and E–VAP were precluded from constructing the waste water disposal system on the Weld County property because of the Temporary Restraining Order and Preliminary Injunction obtained by Travelers.

The Trustee then entered into negotiations with Travelers in order to have the Temporary Restraining Order and Preliminary Injunction lifted and to obtain Travelers' permission to use the property encumbered by Travelers' deeds of trust. On October 31, 1984, the Trustee and Travelers entered into a Memorandum of Agreement ("Agreement") allowing the Trustee to use the property in accordance with the new lease agreement executed by the Trustee and E–VAP, pursuant to certain conditional arrangements with Travelers. In the Agreement, the parties acknowledged that Travelers held senior deeds of trust encumbering all of the real property and improvements owned by the Debtor, that Travelers had previously objected to and would not approve the proposed lease between the Trustee and E–VAP, and that Travelers would withhold its consent to release the Temporary Restraining Order and Preliminary Injunction unless some compensation was paid for use of the property.

The Agreement provided that if Travelers allowed the Trustee to enter into the E–VAP lease, the Trustee would pay Travelers no less than $500,000 in cash from the net operating revenue on or before October 31, 1985. The Agreement also provided that in the event that the E–VAP lease did not generate cash flow over a three month period sufficient to produce annual income of $400,000, the Trustee would automatically consent to entry of an order granting Travelers relief from stay with respect to all of the property securing its claim. In the event the E–VAP lease generated net income in excess of $500,000, the Agreement provided that Travelers and the Trustee would share the resulting income on a 50–50 basis. Travelers agreed to the dismissal of the Temporary Restraining Order and Preliminary Injunction after execution of the Agreement.

On March 1, 1985, the Trustee filed a motion with the bankruptcy court seeking approval of the lease negotiated with E–VAP. A hearing on the Trustee's motion for approval of the lease was held before Judge Brumbaugh on March 7, 1985. During his argument to the Court, counsel for the Trustee informed the Court that the Trustee had entered into a side agreement with Travelers and that Travelers would be paid a minimum of $500,000 from the income generated by the bankruptcy estate from the E–VAP lease and from other leases of the real property. Neither Travelers nor the Trustee, however, sought approval of the Agreement at that time, and the Agreement was not integrated into the E–VAP lease.

Between December 1, 1984, when E–VAP first began operation of the waste water disposal system, and September 1, 1985, when E–VAP defaulted in its obligations under the lease, E–VAP paid the Trustee approximately $300,000.00. The Trustee also earned an additional $100,000 from the farm lease income. In mid-November 1985, E–VAP issued a royalty check to the Trustee representing the bankruptcy estate's forty-five percent (45%) share of the royalty income generated from the E–VAP lease. The check was returned for insufficient funds. After that time,

E–VAP failed to issue a replacement check for the October royalty payment and to pay the Trustee any royalty payments for November and December of 1985 or January and February of 1986. On or about November 1, 1985, the Trustee gave E–VAP written notice of his demand for possession of the property and termination of the lease.

When royalty payments terminated in mid-November 1985, Travelers filed in the Bankruptcy Court a Motion for Relief from Stay, in accordance with the terms of the Agreement, regarding all the Debtor's real property. On November 27, 1985, the Bankruptcy Court entered an Order granting Travelers relief from stay. On January 2, 1986, the Chapter 11 proceeding was converted to a proceeding under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq. On January 13, 1986, Travelers and the Trustee stipulated that Travelers had the right to immediate possession of all the real property securing its claim. The Stipulation was approved on January 17, 1986, after a hearing, and a formal Order approving the Stipulation between the Trustee and Travelers entered on January 22, 1986.

On February 18, 1986, Travelers filed an Application for approval of a super priority administrative claim. In its Application, Travelers requested payment of all amounts received by the Trustee as a result of the E–VAP lease, and any other funds received from the use of the property securing Travelers' claim, as an administrative expense pursuant to the provisions of 11 U.S.C. § 507(b). The Application contended that the Agreement between Travelers and the Trustee was in the nature of, and was intended to be, an adequate protection agreement requiring periodic cash payments to Travelers.

At approximately the same time, American AgCredit Corporation ("AAC") filed an Application for payment of a super priority claim. AAC's Application was based on an agreement between AAC and the Debtor, concerning the Debtor's use of stored crops in which AAC held a perfected security interest. AAC did not file its Application until after the income generated from the

E–VAP lease was received by the bankruptcy estate. AAC and Travelers each filed objections to each other's claim, necessitating a hearing on the Applications. No objections to either Application were filed by other creditors.

On May 9, 1986, a hearing was held before Judge Brumbaugh on the Applications. At the conclusion of the hearing, the Court ruled that AAC had a super priority administrative claim in the amount of $120,139.22, and ordered that the claim be paid. The Court rejected Travelers' Application on the grounds that allowance of a super priority administrative claim "would in effect be approving *nunc pro tunc* an agreement contrary to section 361(3)". *See* Record, Vol. II (Transcript of Hearing), at 124. Counsel for AAC was directed to provide a proposed order reflecting the substance of Judge Brumbaugh's ruling from the bench. The Order was submitted, signed, and entered on May 13, 1986. Travelers filed an Objection, which was denied on June 4, 1986.

This appeal followed. For the reasons set forth below, the decision of the Bankruptcy Court is AFFIRMED.

## II.

The district court is bound to accept the factual findings of the bankruptcy court unless they are clearly erroneous. *In re Golf Course Builders Leasing, Inc.,* 768 F.2d 1167, 1169 (10th Cir.1985); *In re Silver,* 46 B.R. 772 (D.Colo.1985). A court's conclusions of law are freely reviewable on appeal. *United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961); *In re Multiponics, Inc.,* 622 F.2d 709, 713 (5th Cir.1980); *In re Mountain States Sports, Inc.,* 4 B.R. 477 (D.Colo. 1980).

The parties have presented four issues for review: (1) whether a motion pursuant to 11 U.S.C. §§ 362, 363, or 364 must be made before an adequate protection plan can be approved; (2) whether, under section 361(3), adequate protection may be provided by entitling an entity to an administrative expense pursuant to section 503(b)(1); (3) whether equitable considerations preclude AAC from asserting creditors' rights because AAC had actual notice of the Agreement; and (4) whether Travelers' failure to present evidence of damages at the May 9 hearing precludes it from prevailing on appeal. We discuss each issue in the order stated.

## III.

Travelers characterizes the first issue on appeal as whether the filing of a motion pursuant to sections 362, 363, or 364 is a prerequisite to the creation of a valid, enforceable adequate protection agreement. More specifically, we must determine whether the Agreement, which was both an agreement settling a controversy and an adequate protection plan, required court approval before the terms of the Agreement could become binding on the parties. We conclude that court approval was required by Bankruptcy Rule 9019, and by the notice and hearing provisions of sections 362, 363, and 364.

Travelers had every right to seek and obtain adequate protection of its secured claims. "The statutory right of adequate protection provided by sections 362, 363, and 364 of the Bankruptcy Code and defined by section 361 of that Code, exists to protect the value of the secured position held by creditors in property of the estate throughout the course of a bankruptcy proceeding." *In re Cash Currency Exchange, Inc.,* 52 B.R. 577, 580 (Bankr.N.D. Ill.1985). Although sections 362, 363, and 364 specify three methods for providing adequate protection, the methods are not intended to be exclusive or exhaustive. *See In re Potvin Lumber Co., Inc.,* 24 B.R. 54 (Bankr.Vt.1982); *In re Accent Associates, Inc.,* 8 B.R. 933 (Bankr.Mass.1981); *In re Aurora Cord & Cable Co., Inc.,* 2 B.R. 342 (Bankr.Ill.1980). Adequate protection is not defined in the Bankruptcy Code, but legislative history reflects the intent of Congress to give courts flexibility to fashion relief in light of the facts of each case and equitable principles. *In re Cooper,* 22 B.R. 718 (Bankr.Pa.1982). However, it is the function of the court to pass

on the adequacy of protection offered by the trustee, rather than formulate and provide adequate protection on the court's initiative. *In re Cash Currency Exchange, Inc.*, 52 B.R. 577, 581 (Bankr.N.D.Ill.1985).

■ The Agreement, which settled the controversy over Travelers' secured interest in the real property, is referred to by Travelers as an adequate protection plan negotiated with the Trustee. Although the Bankruptcy Court was alerted to the existence of the Agreement, neither the Trustee nor Travelers sought formal court approval of the adequacy of protection afforded by the Agreement. The parties did not seek authorization to use or lease the property pursuant to section 363, or to create unsecured debt pursuant to section 364. The parties did not request that the automatic stay be lifted pursuant to section 362. Sections 362(d), 363(b), and 364(b) all predicate provision of adequate protection on due process requirements of notice and a hearing.

The purpose behind requiring court approval of adequate protection plans stems from the need to weigh competing assessments of the inadequacy, adequacy, or excessiveness of agreements to protect secured claims. In order for the court to analyze the adequacy of protection negotiated among creditors and the trustee, and to fashion relief based on the facts and circumstances of a case, a hearing attended by all interested parties is fundamental. We refuse to assume that the unapproved contractual Agreement would have been approved by Judge Brumbaugh as adequate protection of Travelers' secured claims. The Bankruptcy Court does not rubber stamp approval of adequate protection arrangements. Indeed, because the Agreement called for $500,000 payments, rather than the $350,000 interest payments owed to Travelers on the Deeds of Trust, Judge Brumbaugh may have considered the Agreement's "protection" to be excessive. We will not engage in speculation, especially where court approval is required by statute. Because neither Travelers nor the Trustee sought court approval of the Agreement, the Bankruptcy Court properly refused to recognize the validity of the Agreement.

■ Moreover, court approval was required for an additional reason. Bankruptcy Rule 9019(a) mandates court approval of Agreements, like the one at issue here, which settle or compromise controversies. The Trustee has the authority to settle any controversy involving the bankruptcy estate, subject to court approval. *In re Sherman Plastering Corp.*, 340 F.2d 915, 918 (2d Cir.1965); *In re Medical Sterile Products*, 310 F.Supp. 262, 264 (Bankr.D.P.R. 1970). Bankruptcy Rule 9019(a) provides:

> *On motion by the trustee and after a hearing* on notice to creditors, the debtor and indenture trustees as provided in Rule 2002(a) and to such other persons as the court may designate, the court *may* approve a compromise or settlement.

(Emphasis added.) Although *the Court* has discretionary authority to refuse approval of a settlement, *the trustee* does not have discretionary authority to settle a controversy without moving the court for approval, providing notice to interested parties, attending a hearing, and obtaining formal court approval. Rule 919(a), which preceded Rule 9019(a), also required court approval of settlement agreements, and no legislative or judicial directive has abrogated the requirement. *See Parker v. Baltimore Paint and Chemical Corp.*, 273 F.Supp. 651, 653 (D.Colo.1967); *In re Zerodec Mega Corp.*, 47 B.R. 304, 308–09 (Bankr.E.D.Pa.1985); *In re Bramham*, 38 B.R. 459, 465 (Bankr.D.Nev.1984).

The Agreement effectively settled the controversy addressed by the Temporary Restraining Order and Injunction. Court approval of the Agreement was not obtained in accordance with Bankruptcy Rule 9019(a), and thus the Bankruptcy Court properly refused to recognize the validity of the Agreement. Regardless of whether the Agreement is characterized as the settlement of a controversy or an attempt to arrive at adequate protection, obtaining court approval was a procedural necessity with which neither Travelers nor the Trustee complied.

■ Furthermore, the Bankruptcy Court properly refused to rule *nunc pro tunc* that the Agreement constituted adequate protection for which an administrative expense was allowable. (Rec.Vol. II at 125). A court may approve adequate protection *nunc pro tunc* if it finds that approval would have been granted if proper procedures had been followed. *See In re Waikiki Hobron Associates,* 51 B.R. 406 (Bankr. D.Hawaii 1985). The transcript of the May 9 hearing does not support such a finding. Focusing on the deal negotiated between Travelers and the Trustee, Judge Brumbaugh stated:

> It was a hope of Travelers' that by not pursuing a § 362 motion, realizing on their security immediately, that they would be able to recover more money than they would otherwise.... Travelers took the risk. They assumed with this agreement that there would be more than enough money generated to pay administrative expenses and come up with this extra half-million dollars a year. It didn't work out that way.

Rec.Vol. II at 125–26. Judge Brumbaugh's statement constituted findings of fact, which are reviewable under the clearly erroneous standard. *In re Golf Course Builders Leasing, Inc.,* 768 F.2d 1167, 1169 (10th Cir.1985). We do not find the court's analysis of Travelers' actions to be clearly erroneous.

■ We reviewed Travelers' legal arguments that a section 362, 363, or 364 motion, and its concomitant due process safeguards, is not a prerequisite to court approval of an adequate protection plan. We find the arguments untenable. Further, we hold that the Bankruptcy Court's factual findings were not clearly erroneous, and that *nunc pro tunc* approval was properly rejected.

## IV.

■ The Bankruptcy Court also did not err in ruling that Travelers' Application for a super priority administrative claim was proscribed by section 361(3). In order for Travelers' claim to achieve super priority status, the Trustee must have provided adequate protection, through the authority of the court, pursuant to section 362, 363, or 364. The actual, necessary expenses incurred in litigating a section 362, 363, or 364 motion constitute administrative expenses recoverable pursuant to 11 U.S.C. § 503(b), which are given super priority status pursuant to 11 U.S.C. §§ 507(a)(1) and (b). As discussed above, and noted by the Bankruptcy Court (Rec.Vol. II at 123), no section 362, 363, or 364 motion was ever made, and thus no administrative expenses were incurred and no super priority administrative claim arose. Moreover, the catch-all provisions of section 361(3) specifically prohibit allowance of section 503(b) compensation as a method of adequate protection.

■ Section 361(3) provides:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(3) granting such other relief, *other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense,* as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361(3) (emphasis added). Congress limited the availability of section 503(b) compensation to expenses incurred in litigating section 362, 363, or 364 motions. *See* 11 U.S.C. § 503(b). The only type of adequate protection disallowed by Congress was entitlement to an administrative expense under section 503(b)(1). 11 U.S.C. § 361(3). Section 361(3) gives courts the authority to fashion equitable relief through methods other than those specified in sections 362, 363, or 364, but excludes section 503(b)(1) compensation from the list of available alternatives. Therefore, even if the court had considered the Agreement as a legitimate adequate protection plan authorized by the flexible provisions of section 361(3), the court could not have allowed payment of an administrative expense pursuant to 503(b)(1). Fundamentally, without the existence of a section

503(b) administrative expense, the super priority provisions of section 507(a)(1) and (b) do not come into play.

Travelers argues that the Agreement was an adequate protection plan, albeit unapproved by the court, "requiring the trustee to make periodic cash payments" to Travelers, as authorized by 11 U.S.C. § 361(a). Travelers apparently contends that the negotiation of an adequate protection plan, regardless of whether mandatory court approval was obtained, always gives rise to administrative expenses allowable pursuant to sections 503(b) and 507(a)(1) and (b). Section 361(a) *does* authorize the provision of adequate protection through periodic cash payments, but such protection is explicitly limited to the extent that action under section 362, 363, or 364 "results in a decrease in the value of such entity's interest in such property". 11 U.S.C. § 361(a). Aside from the fact that no section 362, 363, or 364 action was taken, the Bankruptcy Court ruled:

> Even if Travelers were entitled to a super-priority, which I hold they are not, there has been no evidence before me today of any damages that are losses that they incurred.

Rec.Vol. II at 125. Absent evidence of such damages, adequate protection through periodic cash payments is improper, according to the language of section 361(a).

The Agreement was not an adequate protection plan authorized by section 361(a), and thus no administrative expense can be claimed on that ground. As we held in Section I of this Opinion, the Agreement was not a valid, court approved plan pursuant to section 362, 363, or 364, and thus no section 507(b) super priority administrative expense can be claimed. Likewise, section 361(3) prohibits the provision of adequate protection through compensation under section 503(b)(1). Travelers was not entitled to an administrative expense on any legal grounds.

## V.

■ Travelers' third argument rests on equitable grounds. Travelers contends that equitable considerations preclude AAC from asserting creditors' rights because AAC had actual notice of the Agreement. Travelers has placed the cart before the horse. The fact that AAC had notice of the existence of the Agreement does not create a duty in AAC to insure that Travelers and the Trustee comply with the notice and hearing provisions of section 362, 363, or 364. AAC had the right to assume that the Agreement was not valid and binding until court approval was obtained. AAC did not have the duty to object to the validity of the Agreement before the Agreement was presented to the court for approval. Actual notice of a nonbinding agreement does not create an equitable circumstance precluding AAC from asserting its rights as a creditor.

Essentially, Travelers asks us to enforce the terms of the Agreement by allowing an administrative expense equal to the total amount of money generated by leases on the property encumbered by Travelers' deeds of trust. Travelers claims that equitable considerations weigh in its favor. We disagree.

The Bankruptcy Court made factual findings which directly impact on the equities of this case. Judge Brumbaugh specifically found that Travelers gambled and lost. Travelers thought that the E–VAP lease would generate enough money to secure its claims without the need to seek court approved adequate protection. At the time the Trustee and Travelers executed the Agreement, neither party sought court approval in accordance with section 362, 363, 364, or Bankruptcy Rule 9019(a). Moreover, Travelers could have invoked the protections of 11 U.S.C. § 363(e) "at any time", and asked the court to condition the "use, sale, or lease [of the property] as is necessary to provide adequate protection of such interest". Travelers noncompliance with provisions of the Bankruptcy Code and Rules creates *unfavorable* equitable considerations.

Furthermore, nonpayment of monies, pursuant to an unapproved contract with a bankruptcy trustee, is not a compelling equitable consideration. It is undisputed that Travelers was not paid monies owed to it under the terms of the Agreement. However, in a similar situation, a district court ruled:

In its counterclaim Terstep requests relief for the debtor's failure to comply with the purported accord. Since the debtor was not legally obliged to comply with such a contract absent court approval, and, in fact, was barred from such compliance by the Bankruptcy Rules, no relief may be entered on the counterclaim.

*In re Zerodec Mega Corp.*, 47 B.R. 304, 309 (Bankr.E.D.Pa.1985). We fail to see how abrogation of the terms of a nonbinding contract amounts to an equitable circumstance favoring the abrogee.

Travelers' legal and equitable arguments do not merit reversal of the Bankruptcy Court's decision to deny Travelers' Application. We need not reach the question of whether Travelers' failure to present evidence of damages at the May 9 hearing precludes it from prevailing on appeal.

## ORDER

ACCORDINGLY, the decision of the Bankruptcy Court is AFFIRMED. Each party shall bear its own costs and attorney fees incurred on appeal.