**In re HUTTON–JOHNSON CO., INC., Debtor.**

**Bankruptcy No. 80 B 20294.
80 Adv. 2068.**

United States Bankruptcy Court, S. D. New York.

Nov. 3, 1980.

Wachtell, Lipton, Rosen & Katz, New York City, for Empire National Bank.

Brucker, Manley & Finnegan, West Nyack, N.Y., for debtor.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Empire National Bank (hereinafter referred to as "Empire") has commenced an adversary proceeding to vacate the automatic stay imposed by Bankruptcy Code § 362 in order to permit Empire to proceed with its foreclosure sale, pursuant to a final judgment of foreclosure with respect to real property in a shopping center in Nanuet, New York. The complaint also seeks to enjoin the debtor from using any rent receipts from the mortgaged premises, referred to by Empire as the "cash collateral", and to require the debtor to segregate and account to Empire for all cash collateral. The complaint further requests the debtor to provide Empire with adequate protection.

The debtor requests that the stay be continued because Empire is more than adequately protected; its cushion is not eroding and because the debtor possesses equity in the property which is necessary to an effective reorganization.

At a final hearing, pursuant to Bankruptcy Code § 362(e), following a preliminary hearing, the court makes the following Findings of Fact and Conclusions of Law:

FINDINGS OF FACT

1. On July 7, 1980, the debtor filed with this Court a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 et seq., and has continued to operate its business as a debtor–in–possession in accordance with the provisions of Code § 1108.

2. On July 23, 1980, Empire filed its complaint in this adversary proceeding and moved for a preliminary injunction against the debtor to require it to segregate and account to Empire for all cash collateral and to place all cash collateral in a special escrow account to be distributed only to Empire, other than in payment of certain ordinary expenses in connection with the mortgaged premises. After various adjournments and stipulations between counsel as to the continuance of the automatic stay, this Court entered an order on August 12, 1980 directing the payment of rents into an escrow account for Empire's benefit, subject to an allowance for expenses incurred in connection with the mortgaged premises only.

3. On August 29, 1980, the final hearing was held, but because the parties sought additional time to brief the issues, they stipulated that the stay will continue until a decision was rendered.* The case was finally submitted on October 24, 1980.

4. The debtor is a corporation whose president and sole shareholder is J. Herbert Dahm, Jr. The debtor owns and operates a shopping center known as Nanuet Center South, which has been in existence since 1969 and is located at the Nanuet Mall, Town of Clarkstown, County of Rockland, State of New York. The debtor's cash flow problems heightened in the fall and winter of 1977 when its major tenant, Pantry Pride Supermarket, discontinued its operations. Pantry Pride was a tradename used by Food Fair Inc., which filed for relief under Chapter XI of the Bankruptcy Act in October, 1978. Rents were stayed until Food Fair Inc. conducted a sale of existing leases, among which was the Pantry Pride store in Nanuet Center South. The lease was ultimately purchased, after a considerable delay, by a theatre operator, with whom the debtor continued to encounter difficulties.

5. Empire is the holder of a first mortgage on a portion of the debtor's real estate at Nanuet Center South. This mortgage is a consolidation of two earlier mortgages into a single first mortgage lien in the principal sum of $1,800,000.

6. On May 3, 1971, the parties entered into an assignment agreement whereby the debtor assigned to Empire, as additional

---

* The automatic termination of a stay 30 days after a final hearing, as provided under Interim Bankruptcy Rule 4001(a) is inoperative where the court determines that the stay will be continued, which this Court did as a result of the adjournments and stipulations of the parties.

security, rents payable under the mortgaged property. The agreement permitted the debtor to collect the rentals payable under the leases but expressly provided that if the debtor defaulted in the payment of its mortgage indebtedness, Empire would have the right to collect the rents and apply them toward the payment of the mortgage indebtedness.

7. On April 12, 1977, an extension agreement was entered into between the parties whereby the debtor was required to pay the mortgage indebtedness at an interest rate of 9½ per cent per annum in equal monthly installments of principal and interest of $13,918.66.

8. As of October 23, 1979, the debtor defaulted in the monthly installment payments of $13,918.66 due from June, 1979 and the various real estate taxes with respect to the mortgaged premises.

9. On November 1, 1979, Empire filed a foreclosure action in the Supreme Court of the State of New York, County of Rockland. Shortly thereafter, on November 28, 1979, the parties entered into an agreement referred to as the "Lock Box Agreement" requiring the debtor to open a "lock box" with Empire and deposit therein the rent receipts from the mortgaged premises. Under this arrangement, the debtor would submit for payment from the rent proceeds all usual and customary bills and expenses relating to the mortgaged premises.

10. It appears that the debtor did not confine the payments to expenses arising under the mortgaged premises and included instead, the expenses of operating all of its real estate at the shopping center. The debtor blurred the focus on the mortgaged premises and treated the "lock box" agreement as applicable to its business as a whole, which included other properties at the shopping center not covered by Empire's first mortgage. This, of course, was not consistent with Empire's interest in the "lock box" arrangement.

11. On January 23, 1980, a judgment of foreclosure was entered in the New York State Supreme Court in the amount of $1,701,899.26 in favor of Empire, representing unpaid principal, interest and late charges.

12. On March 27, 1980, Empire obtained an order from the state court appointing a receiver in the foreclosure action. Empire then notified the tenants on the mortgaged property that pursuant to the assignment of rentals granted to it, all rental payments should thereafter be made directly to Empire. A stay of foreclosure sale was vacated by the state court on May 8, 1980, which was then scheduled to take place on July 8, 1980. However, the debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on July 7, 1980, thereby invoking the automatic stay under Code § 362.

13. At the time of the hearing, the mortgage obligation was approximately $1,700,002.25. This represented the judgment figure of $1,701,899.26, plus interest of $97,007.76, at the rate of 9½ per cent per annum (which would now amount to over $120,260), less funds retained by Empire under the "lock box" arrangement amounting to $98,904.77.

14. Additional charges in favor of Empire under its mortgage include estimated attorney's fees of $25,000; appraisal fees of $5100 and real estate tax arrearages of $354,927.95, for a total of $385,027.

15. In addition to the foregoing total liability of $2,085,029.25, there is a question concerning the priority of the mechanics' liens filed against the property in the amount of $425,445.94. Empire disputes the priority as to these liens based upon priority of recording its mortgage. Since Empire appears to have a priority in this regard the liability for mechanics' liens will be disregarded in determining the issue of adequate protection.

16. The debtor does face an additional $100,000 liability for school, state, county and town taxes, which are required to be paid under its mortgage. The interest also accrued on the mortgage at the rate of nearly $13,500 per month, based upon a 9½ per cent interest figure. Additionally, real estate taxes will continue to accrue at the rate of approximately $100,000 per annum,

as will interest on delinquent taxes of approximately $35,000 per annum. Thus, excluding the mechanics' liens of $425,445.94, but considering the anticipated charges for 1981, the total liability figure for which Empire must be concerned will amount to approximately $2,470,000.

17. Empire's real estate expert valued the mortgaged premises between $2,184,615 and $2,366,366, and arrived at a figure of $2,350,000. He employed the capitalization of earnings method.

18. The debtor's real estate expert valued the mortgaged premises at $3,000,000. However, his appraisal was based upon a previous appraisal which he performed over a year ago, as of September 20, 1979. The work was not performed solely with respect to the mortgaged premises, but included other adjacent properties owned by the debtor. Therefore, no precise expense figures could be established for the mortgaged premises in question. This appraisal assumed the availability of a mortgage at an interest rate of 11%, when the current prime rate is now in the neighborhood of 14½%. Moreover, the debtor's real estate expert never made an updated appraisal. Accordingly, the court cannot ascribe meaningful weight to the debtor's appraisal.

19. The Court finds that the appraisal figure submitted by Empire's expert in the amount of $2,350,000 fairly reflects the current fair market value of the mortgaged property, especially since it was prepared when the prime rate was lower at the time of the hearing (11%) and that a higher prime rate would mean that the property would have to incur a higher interest rate on the mortgage, thereby making it less attractive to a prospective purchaser than at the hearing date.

20. The debtor has made strenuous efforts to obtain refinancing during the past year, all without success. There was no evidence to suggest that a refinancing of Empire's mortgage is on the horizon.

21. Although the debtor suggests that the property alone adequately protects Empire, it is apparent that an asset valued at $2,350,000 offers cold comfort when contrasted with an outstanding obligation to Empire in 1981 amounting to approximately $2,470,000. There simply is no equity cushion available to Empire who cannot be adequately protected against future loss as a result of the continuance of the automatic stay.

22. The debtor's interest in maintaining the stay is further undercut when the issue of its equity, if any, is addressed. Empire's first mortgage coverage, together with charges and unpaid real estate tax exposure, currently amounts to $2,085,029.25. The second mortgage totals $286,000. The mechanics' liens (notwithstanding Empire's disputed priority claim) must also be included to the extent of $425,445.94, for a grand total of $2,796,475.19. Additionally, $100,000 in real estate taxes will come due within two months, which will produce a total liability of $2,896,475.19, excluding continuing liability for unpaid mortgage interest. Manifestly, a property valued at $2,350,000 cannot be found to offer any equity interest to a debtor exposed to a total debt burden approaching $2,900,000. Hence the court must conclude that the debtor lacks equity in the property.

23. The debtor has not filed or prepared any plan for relief, although it is nearly four months since the debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code. It presented no cogent evidence at the hearing to support a conclusion that reorganization is imminent or that there is a possibility of refinancing or realistically coming to grips with the first mortgagee's claim. Accordingly, the court cannot find that an effective reorganization is likely and that the property in question is necessary to an effective reorganization. It is conceivable that the debtor's other properties not covered by Empire's first mortgage may suffice to support a plan of reorganization. However, much the debtor may need this property for putting together a plan, it cannot be said that there is a likelihood of expecting an effective reorganization in the foreseeable future.

## DISCUSSION

The debtor is a corporation that owns income–producing properties in a shopping center, the major piece being encumbered by a first mortgage which was the subject of a state court foreclosure judgment obtained by the mortgagee–bank, referred to as Empire. Apparently in lieu of the appointment of a receiver in the foreclosure action, the debtor consented to transmitting the rents into a "lock box" arrangement with Empire, subject to the payment of ordinary and necessary expenses in connection with the operation of the mortgaged property. A question was raised as to the propriety of certain payments covering the debtor's adjacent properties which are not covered by Empire's mortgage. However, that question is not determinative of the issues before the court.

The chief objective of Empire in this adversary proceeding is to be relieved from the automatic stay under Code § 362. The debtor filed its petition for relief the day before Empire was scheduled to conduct its foreclosure sale, which is not an unfamiliar scenario. Accordingly, the mortgagee looks to Code § 362(d) for relief from the automatic stay. The two alternative statutory grounds for relief are: (1) cause, which includes, but is not limited to, lack of adequate protection, or (2) lack of equity *and* the property is necessary to an effective reorganization.

### 1. ADEQUATE PROTECTION

Bankruptcy Code § 361 does not define what constitutes adequate protection for any given case, but merely gives three non-exclusive examples of adequate protection when ordered or required as a condition for the exercise of powers authorized under Code § 362. The three suggested examples are: (1) Periodic payments. (2) An additional or replacement lien. (3) Realization of the indubitable equivalent of the impaired property interest.

In this case, the debtor–in–possession, as the party opposing relief from the automatic stay is required by Code § 362(g)(1) to shoulder the burden of proof as to adequate protection and all other is-sues, except the debtor's equity in the property. Empire, as the secured creditor holding a mortgage on the property in question, has the burden of proof on the debtor's equity, or lack of equity, in the property. See Code § 362(g)(2).

The debtor–in–possession has proposed that the mortgaged property itself provides a sufficient equity cushion for Empire to constitute the requisite adequate protection within the meaning of Code § 362(d)(1) to justify continuing the automatic stay. The evolving case law under Code § 362(g)(2) supports the proposition that the property alone may provide a sufficient cushion for a secured creditor so as to justify a continuance of the status quo. Thus, in *Rogers Development Corp.*, 5 B.C.D. 1392, 2 B.R. 679 (Bkrtcy., E.D.Va.1980) the Bankruptcy Court reasoned that a cushion of $130,000 in real estate intended for multi–family dwellings, valued at $750,000, adequately protected the mortgagee. The decision is significant because the debtor could not have satisfied the alternative basis for relief under Code § 362(d)(2) because the debtor had no equity in the property when viewed in the context of all other encumbrances against it. In *San Clemente Estates*, 6 B.C.D. 838, 5 B.R. 605 (Bkrtcy., S.D.Calif.1980), the Bankruptcy Court held that an equity cushion of 65% was adequate protection for the interest of the secured creditor.

In some instances the courts have acceded to the secured creditor's argument that the original bargain called for an equity cushion and that foreclosure is proper when the cushion is reduced to a minimal value, or disappears. *In re Pitts*, 2 B.R. 476 at 478 (Bkrtcy., C.D.Cal.1979); *In re Tucker*, 6 B.C.D. 699, 5 B.R. 180 (Bkrtcy., S.D.N.Y. 1980); *In re Lake Tahoe Land Co.*, 6 B.C.D. 262, 5 B.R. 34 (Bkrtcy., D.Nev.1980). In the *Lake Tahoe* case, supra, the court found that a 40% to 50% equity cushion was necessary with respect to vacant land. In this case Empire contended that its established policy with respect to commercial properties was to advance no more than two–thirds of the lesser of the appraised value or purchase price in the sales transaction. Hence,

Empire reasoned that this cushion was a fundamental element of its bargain. It should be observed, however, that it does not follow that the concept of adequate protection is designed to put the secured creditor in the same position it was in when it initially negotiated the transaction. Suffice it to say that in this case, the court has found that there is no leverage between Empire's secured claim and the value of the property. In the circumstances, the mortgaged property alone cannot serve to satisfy Empire's entitled to adequate protection.

## 2. DEBTOR'S EQUITY AND EFFECTIVE REORGANIZATION

The alternative test under Code § 362(d)(2) with respect to lifting of a stay against property requires proof that:

"(A) the debtor does not have an equity in such property; *and*

(B) such property is not necessary to an effective reorganization." (Emphasis added)

This ground for relief from the automatic stay was directed toward real property mortgage foreclosures where the petition is filed on the eve of foreclosure. *124 Cong. Rec. H. 11,092–3 (Sept. 28, 1978); S. 17,409 (Oct. 6, 1978).* In this case the petition was filed the day before the scheduled foreclosure sale.

It should be noted that both lack of equity and necessity for effective reorganization must be established; the statutory language is in the conjunctive. Thus, in *Rogers Development Corp.,* supra, the finding that the debtor lacked equity but that the property was necessary to an effective reorganization would have been fatal to the debtor under Code § 362(d)(2), but for the conclusion that there was a sufficient equity cushion to satisfy the adequate protection requirement under Code § 362(d)(1). When the secured creditor satisfies its burden of proving that the debtor lacks equity in the property subject to the stay, it necessarily follows that the debtor's desire to continue to hold onto the property in which the secured creditor assumes all of the risk of future loss cannot be given judicial sanction without further adequately protecting

that creditor. *In re Sulzer,* 5 B.C.D. 1314, 2 B.R. 630 (Bkrtcy., S.D.N.Y.1980). Manifestly, the court does not fashion what it believes should adequately protect the secured creditor, *In re San Clemente Estates,* supra; the burden as to this issue is on the debtor, as stated in Code § 362(g)(2). Indeed, at the hearing in this case the court specifically advised the debtor that it would not suggest what would adequately protect Empire since it was the debtor's duty "to come forth and offer adequate protection." This the debtor has failed to do. It owns other properties which could be considered in connection with offering an additional lien. The debtor might consider curing the default and providing periodic payments. It is not the province of the court to structure a package that would be within the debtor's means and acceptable to Empire.

The debtor must also establish that the property in question is necessary to an "effective" reorganization. It does not follow that because the property is indispensable to the debtor's survival that the property is essential to an "effective" reorganization. There must also be shown to exist a reasonable possibility of a successful reorganization. *In re Terra Mar Assoc.,* 3 B.R. 462 (Bkrtcy., D.Conn.1980). This court has found that despite repeated efforts during the past year, the debtor has been unable to obtain refinancing. The mortgage picture at present does not appear to be any brighter. To be sure, interest rates are rising rather than dropping. Hence, the debtor has failed to prove, as required, that there is the likelihood of a successful reorganization. *In re Aries Enterprise, Ltd.,* 6 B.C.D. 280, 3 B.R. 472 (Bkrtcy., D.C.Dist. 1980); *In re Castle Ranch,* 3 B.R. 45 (Bkrtcy., S.D.Cal.1980); *In re Terra Mar Assoc.,* supra.

## CONCLUSIONS OF LAW

1. The debtor has not sustained its burden of proving that it has furnished the first mortgagee, Empire, with adequate protection for its interest in the mortgaged property.

2. The first mortgagee, Empire, has sustained its burden of establishing that the debtor lacks equity in the property in question, as required under Code § 362(d)(2)(A).

3. The debtor has failed to sustain its burden of proving that the property in question is necessary to an effective reorganization within the meaning of Code § 362(d)(2)(B).

4. The first mortgagee, Empire, is entitled to an order lifting the automatic stay and to the relief requested in the complaint. However, there shall be no allowance for costs or attorneys fees in connection with this adversary proceeding except as allowed under the mortgage in any proceeding to enforce such mortgage.