**In re RIVIERA INN OF WALLINGFORD, INC., Debtor.**

**The FRANKLIN CORPORATION, Plaintiff,**

**v.**

**RIVIERA INN OF WALLINGFORD, INC., Defendant.**

Bankruptcy No. 205–5–80–00068.

Adv. No. 205–5–80–0150.

United States Bankruptcy Court, D. Connecticut.

Dec. 16, 1980.

Levin & Charmoy, Bridgeport, Conn., for debtor.

Goldman & Rosen, P. C., Bridgeport, Conn., for The Franklin Corp.

## DECISION ON COMPLAINT OF THE FRANKLIN CORPORATION TO LIFT AUTOMATIC STAY.

HOWARD SCHWARTZBERG, Bankruptcy Judge.*

A truly benevolent secured creditor, who was willing to stand by beyond the 120 day period during which the debtor could prepare a plan, as prescribed under Code § 1121(b), and who was twice willing to accept reduced monthly payments in order to accommodate the debtor's financial distress, has now reached the point where it must seek relief from the automatic stay in order to protect its investment.

### FINDINGS OF FACT

1. The debtor, Riviera Inn of Wallingford, Inc., owns and operates a modular diner on leased premises in the Town of Wallingford, Connecticut.

2. The secured creditor, The Franklin Corporation, is a public corporation, organized and existing under the laws of the State of New York, and provides loans to worthy borrowers. It holds a validly perfected security interest in the debtor's diner and equipment as well as an assignment of the lease between the debtor and the landlord of the real estate on which the diner was constructed.

3. The debtor has defaulted in making payments in accordance with the terms of its mortgage held by Franklin. The unpaid principal balance is $591,733.69, together with interest of $91,718.73. Franklin has also advanced $28,502.52 on behalf of the debtor for taxes, insurance and rent, and has received payments from the debtor amounting to $7527.49, resulting in an aggregate indebtedness of $704,438.45.

4. The diner was originally constructed for the debtor by Kullman Industries, Inc., of Avenel, New Jersey, who sold it to the debtor for $587,780.65, pursuant to a promissory note and security agreement dated April 10, 1978. As additional security for the repayment of the note, the debtor assigned to Kullman its interest under its lease for the premises in question. The lease, dated September 21, 1977, contains an option to purchase the real estate on which the diner is located for $220,000.

5. On June 1, 1978, The Franklin Corporation took over Kullman's interest and received from Kullman an assignment of the security agreement and lease. As part of this transaction the debtor executed a promissory note in favor of The Franklin Corporation for $587,780.65, with interest at 15% per annum, payable in 83 consecutive payments of $11,920.10 per month and a final payment, or 84th payment of $11,913.33 between October 1, 1978 and September 1, 1985. The Franklin Corporation's security interest was duly perfected and is not disputed.

6. As additional security for the repayment of its indebtedness to The Franklin Corporation, the debtor's principal, Vasilios Avramopoulos, executed and delivered to Franklin a third mortgage on a diner in Stratford, Connecticut owned by another corporation in which Mr. Avramopoulos had an interest. There was no evidence adduced as to whether or not there was any equity in the Stratford diner to support the third mortgage.

7. On January 30, 1980, within a year and a half after the debtor commenced doing business in Wallingford, Connecticut, it was compelled to file a voluntary petition

* U.S.B.J., Southern District of New York sitting by designation of the Chief Judge, United States Court of Appeals, Second Circuit.

for relief under Chapter 11 of the Bankruptcy Reform Act of 1978 and it continued operations thereafter as a debtor–in–possession.

8. Reports prepared by the debtor–in–possession's accountant reveal with respect to monthly operations in 1980 a net deficit for February of $1954.54; that March operations resulted in a net deficit of $2,647.83; that the operations in April reflected a net deficit of $7,828.00; that operations in June produced a net profit of $481; that July's operations reflected net cash available of $820; and that August operations resulted in net cash available of $1946.00.

9. It also appears that The Franklin Corporation received at least four written notices from the Town Attorney of Wallingford, Connecticut that the debtor–in–possession was in default in the payment of taxes due in 1977, 1978 and 1979, for a total of $17,080.52. Thus, during the debtor–in–possession period The Franklin Corporation was compelled to pay the taxes owed by the debtor–in–possession in order to protect its security interest.

10. Additionally, The Franklin Corporation received written notice from the debtor's landlord that the debtor–in–possession failed to pay a total of $4000, representing rent due on the premises in question for September and October, 1980. Once again, in order to preserve its security interest and prevent eviction, The Franklin Corporation shouldered this burden and paid the rent that was then due.

11. If the foregoing were not enough, The Franklin Corporation was also notified by the debtor's insurance agent that the debtor–in–possession had defaulted in maintaining its insurance policies, which also ran in favor of Franklin to the extent of its interest. The insurance notice stated:

> "We have 5 bounced checks from the insured. We now need entire balance of $6,169.36 in order to request reinstatement of these policies from the company."

This notice followed an earlier notice of cancellation which previously prompted Franklin to take out its own insurance in the amount of $650,000. Thereafter the debtor–in–possession renewed its insurance coverage and Franklin cancelled its policy. However, when the debtor–in–possession defaulted a second time Franklin once again took out insurance protection, which continues to remain in effect.

12. Notwithstanding the debtor's obligation under its note and security agreement requiring it to pay $11,920.10 per month, Franklin voluntarily permitted the debtor–in–possession to reduce its payments in 1980 to $8,000 per month and thereafter to $6,000 per month. However, this generosity was insufficient solace to the debtor–in–possession who then sought Franklin's consent to a proposal calling for payments of $4,000 per month for one year, $6,000 per month for a second year and $8,000 per month during the third year. The Franklin Corporation refused this proposal because it not only would not amortize the existing indebtedness, but would instead result in an additional $72,000 in interest.

13. Over and above the $704,438.45 now owed by the debtor–in–possession to Franklin under its note and mortgage, it also owes approximately $70,000 for federal taxes and an unspecified amount of state sales taxes.

14. The appraiser's comprehensive report submitted by Franklin concludes, after a review of the various approaches to value, that the current fair market value of the property subject to Franklin's secured interest in its current condition is $650,000. Apparently the appraiser has performed a complete and fair evaluation, because the debtor–in–possession agrees with this conclusion. Thus, this case presents the unique instance where both adversaries accept the fair market value expressed by the same expert.

15. Since Franklin's claim of $704,438.45 is substantially in excess of the collateral value of $650,000, without considering junior secured creditors, it necessarily follows that the debtor–in–possession has no equity in the secured property in question.

16. Next month will be the first anniversary of the debtor's Chapter 11 petition, but the year has not been a fertile one for it. No plan has been forthcoming during this period nor does it appear that the debtor–in–possession will be able to conceive an effective plan in the near future. The most that can be said in this regard is that the debtor–in–possession is now romancing a potential investor, who has indicated his good faith by placing $16,000 in escrow with the attorney for the debtor–in–possession. There is no evidence that this interest will come into fruition or that there will be any *substantial infusion of capital sufficient to* fund an effective plan.

17. That Franklin has not shown it has received any offers to purchase its interest following its proposed foreclosure or that the debtor's other secured creditors have not sought relief from the automatic stay, are immaterial in considering the issue of adequate protection. Franklin's third mortgage on another diner that was given by the debtor's principal as additional security cannot be evaluated in determining whether or not Franklin is adequately protected because there was no evidence as to the value of this interest other than the testimony of Franklin's officer, who ascribed little or no value to the third mortgage on property that has been on the market for sale for over a year. Since the undisputed report submitted by Franklin's appraiser reflects that the total value of the collateral, including the assigned lease containing the *option to purchase the real estate,* amounts to $650,000, it cannot be said that Franklin is adequately protected to the extent of its claim for $704,438.45. Moreover, the interest on the indebtedness will continue to mount as long as the debtor–in–possession fails to pay less than $8,000 per month. Furthermore, taxes, rent and insurance will continue to accrue. Franklin should not be called on to continue to pay these items when the value of its collateral is currently less than its claim. In these circumstances, it must be concluded that Franklin is not now adequately protected.

18. The debtor–in–possession has not offered Franklin any periodic payments for current interest and amortization, any replacement lien, additional collateral or other items of value in satisfaction of its burden with respect to the issue of adequate protection, other than the property already subject to Franklin's security interest.

## DISCUSSION

■ The president of the debtor–in–possession in this Chapter 11 case testified that if the secured creditor, The Franklin Corporation, were permitted to foreclose upon its mortgage covering the debtor's diner, he could not then come up with a plan of reorganization because he could not be expected to feed his customers in the parking lot. Obviously the debtor–in–possession cannot conduct its restaurant business without the modular diner which is the subject to the secured creditor's collateral. However, it does not follow that because the secured collateral is needed in the debtor's business the secured creditor should be denied relief from the automatic stay under Code § 362 when it is shown that the debtor–in–possession lacks equity in the property. The debtor–in–possession's need for the property, without more, does not justify preserving the automatic stay, since if there were no need for the property there would be no resistance to the relief requested. Manifestly, need alone is not the sine qua non under Code § 362(d)(2).

■ The statutory authorization for lifting the automatic stay when the debtor does not have an equity in the property requires that:

"... such property is not necessary to an *effective* reorganization." [Emphasis added] Code § 362(d)(2)(B)

That the property in question is indispensable to the debtor's survival does not mean that it is essential to an "effective" reorganization. There must also exist a reasonable possibility of a successful reorganization. *In re Terra Mar Assoc.,* 3 B.R. 462 (Bkrtcy., D.Conn.1980); *In re Hutton–Johnson Co. Inc.,* 6 B.R. 855 (Bkrtcy., S.D.N.Y.1980). This court has found there is no likelihood of a successful reorganization on

the horizon. The debtor–in–possession's failure to establish this prerequisite is fatal to its efforts to maintain the automatic stay. *In re Aries Enterprise, Ltd.*, 6 B.C.D. 280, 3 B.R. 472 (Bkrtcy., D.C.Dist.1980); *In re Castle Ranch*, 3 B.R. 45 (Bkrtcy., S.D.Cal. 1980); *In re Terra Mar Assoc.*, supra; *In re Hutton–Johnson Co. Inc.*, supra.

 Alternatively, the debtor–in–possession reasons that Franklin is adequately protected to the extent of the mortgages it holds on the property in question. It is true that in certain instances the property alone may provide a sufficient cushion for a secured creditor so as to justify a continuance of the status quo. *In re Rogers Development Corp.*, 5 B.C.D. 1392, 2 B.R. 679 (Bkrtcy., E.D.Va.1980); *In re San Clemente Estates*, 6 B.C.D. 838, 5 B.R. 605 (Bkrtcy., S.D.Calif.1980). However, Code § 362(g)(2) places the burden on the party seeking to maintain the stay to establish that the secured creditor is adequately protected. The court does not fashion what it believes should adequately protect the secured creditor. *In re Hutton–Johnson Co. Inc.*, supra. *In re San Clemente Estates*, supra. This court has found that Franklin's secured claim in excess of $704,000 is not adequately protected by its merely holding a mortgage on collateral valued at $650,000. In the circumstances, the debtor–in–possession was obliged to come forward and offer adequate protection to Franklin within the definition of this concept under Code § 361; and this was not done.

■ Accordingly, since the secured creditor is not adequately protected, whereas the debtor lacks equity in the collateral and no effective reorganization appears to be likely, this court must lift the automatic stay, as required under Code § 362.

## CONCLUSIONS OF LAW

1. The debtor–in–possession has not sustained its burden of proving that it furnished Franklin with adequate protection for its interest in the mortgaged property, as required under Code § 362(d)(1).

2. The mortgagee, Franklin, has sustained its burden of proving that the debtor–in–possession lacks equity in the property in question as required under Code § 362(d)(2)(A).

3. The debtor–in–possession has failed to sustain its burden of proving that the property in question is necessary to an effective reorganization within the meaning of Code § 362(d)(2)(B).

4. The mortgagee, The Franklin Corporation, is entitled to an order lifting the automatic stay and to the relief requested in the complaint.