In re WESTCHESTER AVENUE MARI-NA REALTY, INC., Debtor.

Bankruptcy No. 90 B 20993.

United States Bankruptcy Court,
S.D. New York.

Feb. 25, 1991.

Wingate & Cullen, Jericho, N.Y., for Citibank, N.A.

Sidney Turner, P.C., White Plains, N.Y., for debtor.

DECISION ON MOTION FOR AN OR-
DER VACATING AUTOMATIC STAY

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Citibank, N.A. ("Citibank"), a senior lien creditor, seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d). The debtor owns and operates a marina in Port Chester, New York on the Byram River. The marina ran into financial difficulties as a result of the erection of a new building on its premises which, pursuant to a state court order, must be removed for violation of zoning laws. Additionally, the debtor sustained financial losses from its involvement in an unsuccessful marina business in Florida.

## FINDINGS OF FACT

1. On October 10, 1990, the debtor filed with this court its voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and continued to operate its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. The debtor is engaged in the operation of a marina for the sale, storage and servicing of pleasure boats in Port Chester, New York on the Byram River.

3. Citibank has an allowed proof of secured claim as of the date of October 10, 1990 in the amount of $1,402,139.48, represented by several mortgages, one of which is a senior lien against the debtor's real property.

4. A portion of Citibank's secured claim reflects a claim of $827,254.95 under a First Mortgage. The First Mortgage Note which was made and delivered on September 6, 1985 provides for the repayment in five (5) years from its date of the principal amount of $800,000.00, together with interest thereon, in fifty-nine (59) monthly installments based on amortization of principal and interest over a twenty (20) year period and a final sixtieth (60th) "balloon" payment of principal and interest due on September 6, 1990. The debtor defaulted in payment of the monthly payments due pursuant to the First Mortgage Note and has not made any payments since January 6, 1990. Pursuant to its terms, the entire balance of principal and interest accrued on the First Mortgage Note was due on September 6, 1990, and as of the date of the filing of the bankruptcy petition, the total due Citibank on the First Mortgage Note was $827,254.95. Interest accrues at the rate of $241.18 per day. The debtor has not made any payment to Citibank on account of the First Mortgage Note and First Mortgage subsequent to the filing of the bankruptcy petition.

5. Also included in Citibank's secured claim of $1,402,139.48 is a mortgage obligation with respect to a floor plan financing arrangement under a Security Agreement and Floor Plan Mortgage. The Floor Plan Agreement provides that, upon the sale of any financed boats, the proceeds from the sales were to be held by the Debtor in trust for Citibank and thereupon immediately paid over to Citibank. The debtor defaulted under the terms of the Floor Plan Agreement. As authorized by the Floor Plan Agreement, Citibank declared the entire balance due under the Floor Plan Agreement immediately due and payable. The debtor failed to pay the amount due and thereafter, on or about February 2, 1990, Citibank commenced an action in the Supreme Court of the State of New York, County of Westchester, to foreclose the Floor Plan Mortgage. On September 19, 1990, a final judgment of foreclosure and sale was entered in the Floor

Plan Foreclosure Action. The foreclosure judgment directed a sale of the premises and fixed the amount due to Citibank and secured by the Floor Plan Mortgage at $562,228.46, plus attorneys' fees of $5,333.50 and an additional allowance for costs of $300.00 for a total of $567,861.96.

6. In addition to the $1,402,139.48 secured claim of Citibank, the debtor's real property is encumbered by three other secured claims. First Chrysler Wholesale Credit ("Chrysler") holds a junior mortgage and lien for a debt as of October 10, 1990 in the sum of $538,923.11. The debtor's counsel stated that he intended to negotiate with Chrysler and had some discussions concerning returning floor plan items in exchange for a release or reduction of Chrysler's claim. Caribbean Keys Charter, Inc. ("Caribbean") claims a junior mortgage lien against the debtor's real property in the sum of $412,500.00 as of October 10, 1990 in connection with the sale of a boat which is the subject of pending litigation. Caribbean recorded its mortgage on July 13, 1990, which was within the ninety-day preference period under 11 U.S.C. § 547(b)(4)(A). The debtor's counsel stated that he intends to proceed promptly to seek to set aside the Caribbean secured claim as a voidable preference.

7. The debtor also owes unpaid real estate taxes which constitute a lien on its real property in the amount of $107,882.66.

8. In addition to holding a lien against the debtor's real property, inventory and equipment, including boats and related accessories and other personal property, Citibank also holds a mortgage on a residence previously owned by the mother of Janet Passarelli, the president of the debtor. The residence is located in Rye Brook, New York. The mortgage was given to Citibank as additional collateral for Citibank's floor plan advances. The Rye Brook residence was thereafter transferred by Mrs. Passarelli's mother to Janet Passarelli and her husband Gustave Passarelli, who is the treasurer of the debtor. However, Gustave Passarelli filed a bankruptcy petition in the United States District Court in Florida, with the result that Citibank is stayed from attempting to enforce its lien on the Rye Brook residence because of the effect of 11 U.S.C. § 362, as it applies to Gustave Passarelli's bankruptcy estate, including his interest in the Rye Brook residence.

9. The debtor's current difficulties arose from the fact that it expended considerable funds in erecting a new building on its premises for storing and servicing boats which the state court ordered must be torn down for violating local zoning ordinances. Other financial problems arose out of transactions and guarantees with respect to an unsuccessful marina operation in which Gustave Passarelli was involved in Florida. Additionally, as a result of the general economic recession now affecting all businesses, people are not purchasing as many pleasure crafts and boats as in the past because pleasure crafts are the last items bought in a recessionary period.

10. The debtor's cash flow is currently low because income for winter storage was generally paid in advance and income from summer storage and activities will not begin to come in until early April of 1991.

11. The debtor's yearly net income figures are positive. For the fiscal years ended June, 1988, 1989 and 1990, the debtor's net profit was $475,867.00, $1,311,198.00 and $397,117.00 respectively, as reflected in the report submitted by the debtor's appraisal firm, McGrath, Basciani & Associates.

12. Citibank's appraisal firm, D.J. Squires/Advanced Appraisal Associates, Inc., submitted a report which reflected the present value of the debtor's real estate as $1,300,000.00 using a continuation of the income capitalization approach and the cost approach. However, this report is flawed in that it arrives at estimated income by using a survey of other marinas and boat rental businesses for the purpose of projecting an estimated market rental rate for boats, instead of using the actual rent charged by the debtor. Citibank's appraiser rejected the debtor's actual rental rates because he said they were higher than others in the market. However, in capitalizing the debtor's income he should have used the debtor's rental rates because these

rates more accurately reflect the debtor's income.

13. Citibank's appraisal also suffers from a failure to recognize a difference in value attributable to the comparable properties analyzed, all of which were not waterfront properties, and lacked the enhanced value of a marina located on waterfront property.

14. A further problem with the Citibank appraisal is the fact that the same appraisal firm prepared another report for the same property two years earlier, which reflected a value of $2,350,000.00. The difference of over $1 million between the two estimates is not credibly explained, even allowing for the removal of the building due to zoning violations and the existence of a declining return on real estate values between 1988 to date. In the appraisal for 1991, Citibank's appraisers state: "However from 1988 to the present we have observed a leveling and downward trend of real estate values in this region which we have estimated to be 5% per year."

15. The debtor's appraisal report was more consistent with comparable properties, including one waterfront property in the Byram River opposite the debtor's property. This report valued the property at $2,280,000.00. The report noted that even if the newly constructed storage building must be removed as violating zoning regulations, such removal would increase the boat storage capacity of the site. Therefore, it was concluded that the market value of the real estate would not significantly diminish in value if the building was to be removed. This report is based on the debtor's actual income figures and an actual count of boat storage slips and spaces which is higher in number than those reflected in Citibank's appraisal report. The $2,280,000.00 figure is more consistent with Citibank's own 1988 appraisal of $2,350,000.00. Accordingly, a present value of $2,280,000.00 is accepted as appropriate for purposes of this proceeding.

16. In determining Citibank's exposure in this case it is noted that Citibank's secured claim of $1,402,139.48, when coupled with the secured tax claims of $107,882.66,

results in a total secured debt of $1,510,-022.14, as compared with a market value of the debtor's real estate in the amount of $2,280,000.00, for an equity cushion of $760,977.86.

17. In determining whether or not the debtor has any equity in the property, the debtor discounts the Chrysler mortgage claim, scheduled by the debtor as $500,000.00 because the debtor is engaged in settlement discussions with Chrysler. The debtor contends that the actual secured claim is approximately $250,000.00, which it expects to reduce by returning certain floor plan boats which gave rise to this secured debt. This argument ignores the fact that Citibank also has a secured interest in these boats and that they may not be returned without Citibank's consent or the approval of this court, because the unsecured claims also have an interest in the proposed return of boats. The court may not accept the debtor's lower figure of $250,000.00 because until objected to or reduced, Chrysler's listed secured claim must be accepted by the court. Although listed in the schedules as $500,000.00, the debtor's financial statement for the period entered October 31, 1990 lists the precise amount as $538,923.31.

18. The debtor listed in its schedules a secured disputed claim asserted by Caribbean Keys Charter, Inc. in the sum of $350,000.00. Citibank asserts that the actual amount is $412,500.00. In any event, the debtor disputes this secured claim and notes that the mortgage securing this lien was recorded within ninety days from the date of the debtor's Chapter 11 petition and that it is patently avoidable as a preference given by the debtor for an antecedent debt. Because there appears to be substantial merit to the debtor's dispute and because the debtor has not had occasion to commence a voidable preference action against this claim, although it states that it will promptly commence such an action, this court will not include the Caribbean claim in ascertaining the debtor's equity, if any, in its real property.

19. In sum there appears to be a potential equity remaining for the debtor, computed as follows:

| Market Value of Real Property | | $2,280,000.00 |
|---|---|---|
| $1,402,139.48 | (Citibank's Secured Claim) | |
| 107,882.66 | (Unpaid real estate taxes) | |
| 538,923.31 | (Chrysler Secured Claim) | |
| Total | | 2,048,945.45 |
| Debtor's Equity | | $ 231,054.55 |

## DISCUSSION

According to the facts in this case, the debtor's marina may be just above water, but may sink if the debtor is unable to set aside an alleged preferential fourth mortgage which the debtor disputes. After discounting this potentially voidable secured claim, the court found that the debtor's interest in the marina real estate exceeds all the demonstrated secured claims against it by approximately $231,000.00, which is not a very high watermark. Additionally, the market value of the debtor's marina real estate, which was found to be $2,280,000.00, floats above Citibank's secured lien of $1,402,139.48 by $878,860.52, which Citibank argues does not adequately protect it from continued erosion with the passage of time and the addition of unpaid real estate taxes.

The governing requirements are set forth in 11 U.S.C. § 362(d), which authorizes relief from the automatic stay (1) for cause, including lack of adequate protection or (2) where the debtor lacks equity in the property and the property is not necessary to an effective reorganization. In determining the issue of the debtor's equity or lack of equity in property, Citibank has the burden of proof at this point because it is the party requesting relief from the stay. *See* 11 U.S.C. § 362(g)(1). Citibank failed to demonstrate that the debtor totally lacked equity in the property. On the other hand, the debtor sustained its burden imposed under § 362(g)(2) by showing that Citibank is adequately protected within the meaning of § 362(d)(1). However, the clock is ticking, real estate taxes are accruing, post-petition interest on oversecured property is not being paid as required under 11 U.S.C. § 506 and the court has not authorized the debtor to use cash collateral represented by the proceeds of accounts receivable secured by Citibank's lien. Such advance court approval is required under 11 U.S.C. § 363(c).

The debtor cannot expect to remain sheltered indefinitely under the umbrella of the automatic stay. More than four months have elapsed since the debtor filed its Chapter 11 petition and very little progress has been made towards the filing of a plan or towards an effective reorganization. That Citibank's secured claim is not presently undersecured does not mean that the debtor has clear and unlimited sailing in this court. Manifestly, had Citibank demonstrated that despite its oversecured position, the debtor, nonetheless, lacks equity in its marina real estate, there would have been a closer scrutiny of the conjunctive mandate under 11 U.S.C. § 362(d)(2)(B) that the property is not necessary to an effective reorganization. However, the debtor appears to have a slight equity in the marina real estate. The term "equity" means the difference between the value of the property in question and the encumbrances against it. *Sutton v. Bank One, Texas National Association (In re Sutton)*, 904 F.2d 327, 329 (5th Cir.1990). If a secured claimant establishes that the debtor lacks equity in the subject property, it then becomes the burden of the debtor to demonstrate that the prop-

erty is necessary to an effective reorganization and that such reorganization is in prospect within a reasonable time. *In re Sutton,* 904 F.2d at 330. Because of the existence of some equity in this case, consideration must therefore be directed to the requirement of cause, including the concept of adequate protection, as expressed in 11 U.S.C. § 362(d)(1), because the requirement under 11 U.S.C. § 362(d)(2)(B) does not come into play.

Citibank cites this court's decision *In re Saint Peter's School,* 16 B.R. 404 (Bankr.S. D.N.Y.1982) for the proposition that foreclosure should be permitted where the debtor lacks equity in its only asset. However, not only does the debtor in this case have some equity in its assets, but its business is still alive. In the *Saint Peter's* case, this court said: "Saint Peter's gates closed in 1979." *In re Saint Peter's School,* 16 B.R. at 405.

The mere fact that the debtor enjoys a so-called equity cushion above the secured claim of Citibank does not mean that the debtor may float on this cushion out of the troubled waters stirred up by Citibank's request for relief from the stay. It has been held that the equity cushion theory is not totally persuasive. *See, In re Lane,* 108 B.R. 6 (Bankr.D.Mass.1989). This is especially true if the debtor has offered no additional payments, there exists a declining value of the secured claim in the face of declining real estate values, there is unpaid interest required to be paid under 11 U.S.C. § 506(b), there are unpaid real estate taxes and there is no plan of reorganization proposed by the debtor after more than four months following the filing of the Chapter 11 petition. In these circumstances, Citibank is entitled to some relief while the debtor is given an opportunity to demonstrate that it is in a position to achieve an effective reorganization.

Accordingly, Citibank's motion for relief from the stay is denied, provided that the debtor pays by April 1, 1991 all real estate taxes which became payable after it filed its Chapter 11 petition. Additionally, the debtor must promptly proceed to establish its allegation that the Caribbean secured claim is a voidable preference and must file by April 1, 1991 a Chapter 11 plan which reflects realistic prospects for achieving an effective reorganization. Additionally, the debtor may not use any cash collateral without an order issued by this court.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(G).

2. Citibank's motion for relief from the automatic stay under § 362(d)(2) is denied because the debtor has demonstrated that it has some equity in its marina real estate.

3. Citibank's motion for relief from the automatic stay under § 362(d)(1) is denied, conditioned upon the debtor; (a) paying by April 1, 1991 all real estate taxes which become payable after it filed its Chapter 11 petition on October 10, 1990; (b) promptly proceeding to establish its allegation that the Caribbean secured claim is a voidable preference; and (c) filing by April 1, 1991 a Chapter 11 plan which reflects realistic prospects for achieving an effective reorganization.

SETTLE ORDER on notice in accordance with the foregoing.